PEOPLE *v.* CLAYTON.

1. CRIMINAL LAW—PROSTITUTION—TRIAL—FAILURE TO MAKE OPEN-
ING STATEMENT.

Failure of the prosecuting attorney to make an opening
statement to the jury, in a prosecution for maintaining
a house of ill-fame, as required by Circuit Court Rule
No. 24, is not reversible error, where said omission is
not shown to have been prejudicial to defendant's case.

2. SAME—EXAMINATION OF JURY—STATEMENT AS TO APPEARANCE
OF DEFENDANT NOT PREJUDICIAL.

A statement by the prosecutor, when examining the jury,
as to whether they would let sympathy creep into their
decision by the appearance of defendant, "which shows
she is in mourning," even if unjustified, presents no re-
versible error.

3. SAME—WHERE ADMISSION OF GUILT NOT DENIED, QUESTION OF
ERROR IN ADMISSION OF PROOF NOT CONSIDERED.

In view of the fact that testimony as to admissions of
defendant clearly showing that she was guilty as charged
was not denied, it is unnecessary to consider assignments
of error as to the admission of proof.

Error to recorder's court of Detroit; Brennan (John
V.), J.    Submitted October 14, 1926.    (Docket No.
117.)    Decided December 8, 1926.

Fay Clayton was convicted of maintaining a house
of ill-fame, and sentenced to imprisonment for not less
than 1½ nor more than 5 years in the Detroit house
of correction.    Affirmed.

Criminal Law, 17 C. J. §§ 3638, 3665.

*Thomas L. Dalton* and *Frederick P. Hempel,* for appellant.

*Andrew B. Dougherty,* Attorney General, *Robert M. Toms,* Prosecuting Attorney, and *Seward F. Nichols,* Assistant Prosecuting Attorney, for the people.

SHARPE, J.    The defendant reviews her conviction of the charge of keeping and maintaining a house of ill-fame resorted to for the purpose of prostitution and lewdness and the denial of her motion for a new trial by writ of error.

About 1:30 in the morning of October 25, 1925, several police officers went to 2226 Brush street, in the city of Detroit.    One of them, a policewoman, had a warrant to arrest one Rebecca Trombly on a charge of pandering.    She was admitted by defendant.    Four men were intercepted in an effort to escape by the back door.    Rebecca Trombly and a girl named Donna Walker were found hidden in the basement.    One of the officers testified:

"At that time I did have a conversation with Fay Clayton.    Well, I found a gun on her bed and I asked her why she had the gun there, and she said, well, that she lived there all the time and she didn't have any other protection, and she did not employ a steady maid.    She says, 'You know, when you are in my business, if you are not around all the time to watch the trade, the girls cheat on you, they have men come here, and they don't tell you about it, and as long as I am in the business, I might as well get all that is coming to me.'    She said, 'After the girls go home, I am afraid to stay alone, so I have a dog downstairs and I have a gun upstairs for protection.'    She said, or she wondered why I had Miss Breen with me. She said, 'Did you expect to find any girls here?'    I told her why we thought so, and she said, 'Well, both you and Miss Breen know all my girls, because they are registered women.'    I asked her where the girls were and she said, 'Well, you know when the law comes, they make a getaway.    Very likely they went

out the small window on the first floor at the side.'
I said I didn't think that was possible because we had
the house surrounded.    Then she said she didn't know
where they were.    I said, 'I understand you have a
few traps in the house.'    She said, 'Yes,' and she
showed me one in the front room back of the dresser,
a panel in the wall.    She said that is all they had."

She also testified that defendant said that "she paid
$75 a month rent, that she didn't know who the owner
was, she paid it to some agent."    The girls when
discovered were but partially dressed.    Some of the
men found in the house said they were customers, and
the girls said they came there to work.

Another of the officers testified:

"I asked her where the girls had gone to, and she
said, 'Well, you ought to know better than to come
here on Saturday night, because the girls don't like
to get arrested on Saturday night, they have to stay
in over Sunday in the detention home if they are
arrested, and of course, when you came, they got out
of the window as they always do when the law comes.'
She said, 'There is no use in my lying to you, you
know I have girls here, and I know all of you know
it,' and she said, she paid $75 a month rent for the
place."

Two other officers testified to statements similar in
character made at that time by the defendant.    The
prosecution also offered proof tending to show that
the defendant was the occupant of the premises; that
the girls found in the house were of ill-repute, and
that it had the reputation of being a house of prostitu-
tion.    No witnesses were sworn on behalf of the
defendant.

1. Error is assigned on the failure of the prosecut-
ing attorney to make an opening statement to the jury.
The jury were doubtless fully informed as to the
charge against defendant when examined on their
*voir dire*.    While the rule (Circuit Court Rule No.
24) makes it the duty of the plaintiff's counsel to

make such a statement, it was held in *People* v. *Kohar-ski,* 177 Mich. 194, 196, that the refusal of the court to enforce this rule was not reversible error "where its omission is not shown to have been prejudicial to respondent's case."

2. The prosecutor, when examining the jury, asked:

"Will you in any way let sympathy creep into your decision in this case because of the appearance of the defendant at this time which shows she is in mourning?"

Defendant's counsel took an exception to the statement. It does not appear that the question was answered. The statement made, even if unjustified, presents no reversible error.

3. The other assignments relate to the admission of proof. In view of the statements of the defendant to the officers, heretofore quoted, and the fact that no denial of their truth was made by her, it is unnecessary to consider these questions. The admissions made by her clearly show that she was violating the law in the manner charged in the information.

The judgment is affirmed.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.