PEOPLE *v.* MERLO

1. CRIMINAL LAW — CONSTITUTIONAL LAW — CONFESSION — WALKER HEARING.

> Defendant arrested for forgery and being held for possession of an unregistered handgun, who spontaneously and voluntarily confessed that he fatally shot his wife, was not deprived of his constitutional rights when he gave a second oral confession as to the murder of his wife, after being apprised of his constitutional rights pursuant to *Miranda*, where defendant had a *Walker* hearing in which it was determined that the second confession was voluntary, but made no motion to suppress the oral statements (*Miranda* v. *Arizona* [1966] 384 US 436; *People* v. *Walker* [On Rehearing, 1965], 374 Mich 331).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—EVIDENCE—CONFESSION—VOLUNTARINESS.

> The fact that the first confession of a defendant may be inadmissible does not *ipso facto* render a second confession inadmissible, unless the first confession was the result of illegality and the second confession was obtained by exploitation of that illegality; therefore, where police were unaware when they started to question defendant that he had killed his wife, defendant knew that police were not aware of the crime, and defendant voluntarily and without hesitation or solicitation by the police related the fatal shooting of his wife, and after having been given his constitutional warnings, orally related the killing of his wife for the second time, and where the record was devoid of any showing that the second confession was in any way linked to the first statement, the second statement was purged of any prior illegality and was admissible in evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 537, 538, 555–557.
[3] 53 Am Jur, Trial § 455.
[4] 53 Am Jur, Trial § 120.
[5] 5 Am Jur 2d, Appeal and Error § 783 *et seq.*

3. HOMICIDE—MURDER—MOTIONS—OPENING STATEMENT—PREMEDITA-
TION—EVIDENCE.

> Motion by defendant accused of first-degree murder to dismiss
> on the grounds that the people's opening statement failed to
> state the facts to be relied upon to prove premeditation, was
> properly denied where the prosecutor read the information
> charging the defendant with first-degree murder, outlined the
> theory of his case, there was no doubt the prosecution would
> attempt to prove premeditation and defendant could easily
> have surmised from the opening statement and indorsed *res*
> *gestae* witnesses the manner in which premeditation would
> be established.

4. WITNESSES—REBUTTAL WITNESSES—DISCRETION—MURDER.

> The trial court did not abuse its discretion in allowing a
> murder victim's mother to be indorsed during trial as a
> rebuttal witness and to testify, where defense counsel asked
> several questions of defendant regarding declarations and acts
> of the victim's mother.

5. APPEAL AND ERROR—JUDGMENT—NEW TRIAL—MISCARRIAGE OF
JUSTICE—CRIMINAL LAW.

> A judgment or verdict shall not be reversed in any criminal
> case unless in the opinion of the court, after an examination
> of the entire cause, it shall affirmatively appear that the error
> complained of resulted in a miscarriage of justice; there-
> fore, where a review of defendant's alleged errors did not
> show reversible error there was no miscarriage of justice, and
> defendant's conviction is affirmed (CL 1948, § 769.26).

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 November 5, 1969, at Lansing. (Docket No. 5,278.) Decided May 25, 1970.

John Merlo was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *David P. Stoller,* Assistant Prosecuting Attorney, for the people.

*Parvin Lee, Jr.,* for defendant on appeal.

Before: GILLIS, P. J., and McGREGOR and V. J. BRENNAN, JJ.

McGREGOR, J. Testimony established that on January 6, 1967, the defendant went to his estranged wife's place of employment and there shot and killed her. His flight from Michigan took him to Ohio and subsequently to Philadelphia, Pennsylvania, where he took a hotel room. While in this hotel, defendant entered the adjoining room, stole a bank passbook, and closed out the account in the name of the account holder. Having received a check in the name of the account holder for the funds in the account, defendant forged the account holder's signature and endorsed the check to himself. He was apprehended by the Philadelphia police when he attempted to cash this check. After his arrest, defendant was questioned by a Philadelphia police detective on January 20, 1967. Evidence presented reveals that at the time of his arrest, the Philadelphia police were not cognizant of the Michigan shooting.

Upon his arrest, defendant was taken to the police station and put into a room with a bank detective and a police detective. Defendant's first request was to see the FBI; the police detective indicated that this request would not be granted and advised the defendant to tell him about the questioned check. At this point, the defendant confessed to the shooting of his wife, in Farmington, Michigan. The detective gave defendant his constitutional warnings and then left to call the Farmington, Michigan, township police department to verify the defendant's story. Upon receiving corroboration, the detective returned to the interrogation room and asked defendant to tell him again what happened to his wife, and also what happened in Philadelphia.

For the second time, defendant related the story of shooting his wife; however, when a stenographer was brought in, shortly thereafter, and defendant was asked to tell again what had happened in Michigan, he replied that he did not want to talk about the incident but would wait until he returned to Michigan.

At trial, the second oral confession was admitted into evidence after a *Walker*[1] hearing was held. Defendant was charged, tried, and convicted of first-degree murder; from this verdict, he appeals.

Defendant questions whether his second oral confession could be used against him, since it was made after he was given his constitutional warnings, pursuant to *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974), but without apprising him of the fact that it was uncertain whether the confession made before these warnings were given was admissible as evidence. The trial court ruled in its *Walker* hearing that the second confession met constitutional standards and was admissible. At the time of the initiation of this case, GCR 1963, 785.5 required the people to give notice of intent to introduce into evidence a defendant's confessions or admissions. Such notice was filed with the court clerk in this case and made a part of the record on file on February 28, 1967. Trial was not had until December 12, 1967. It appears that the defendant had ample time to file proper motion to suppress the statements, but such motion was not made, notwithstanding a *Walker* hearing.

The prosecution argues that when defendant was taken into custody, the police were totally unaware that he had committed or was sought for any crime other than the one for which he was arrested. During their discussion with the defendant concerning

---

[1] *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

the alleged forged check, defendant made his request to see the FBI; after this request was refused, he purportedly made a "spontaneous" confession to the effect that he had shot his wife. The prosecution contends that the interrogation, as envisioned by *Miranda*,[2] had not begun, and that defendant's rights to these warnings had not yet arisen; that, in addition, his first confession would have been admissible in any event, and that it could not have been error to admit this subsequent confession.

This Court must make a determination whether defendant's first confession was elicited in violation of defendant's constitutional rights, as enunciated by *Miranda* and its progeny.

Defendant was arrested for closing out a bank account and for forging the account owner's signature on the back of the check; he was also being held for possession of an unregistered handgun. There was no doubt in anyone's mind that the defendant had actually committed these crimes. Testimony of the police officer indicated that, during his conversation with the defendant concerning events entirely foreign to the Michigan murder, the defendant asked for the FBI, and that the Philadelphia police then explained that the bank forgery charge was their concern. Detective Roslund testified that, while he was talking with the defendant about one charge, the defendant suddenly started talking about another matter entirely, namely, his fatal shooting of his wife:

---

2 "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, *we mean questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona* (1966), 384 US 436, 444 (86 S Ct 1602, 1612; 16 L Ed 2d 694, 706; 10 ALR3d 974, 993). (Emphasis added.)

"I started questioning him about the crime in Philadelphia, and he said he didn't want to talk to me about this, he wanted to talk to the FBI. I stated to him that this crime had nothing to do with the FBI and that I only wanted to talk to him about this crime, and it kept going on in this vein, and finally I said, 'Well, you're going to have to talk to me. I'm not going to get the FBI for you. You're just going to have to talk to me about it,' and at this time is when he made the spontaneous statement, after this little   *   *   *   ."

While the record is not clear as to the trial court's consideration of the first confession, the mere fact that the first confession may be inadmissible does not *ipso facto* render the second inadmissible. The question then becomes:

"whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun* v. *United States* (1963), 371 US 471, 488 (83 S Ct 407, 417; 9 L Ed 2d 441, 455), quoting from Maguire, Evidence of Guilt (1959), 221.

Applying the above standard as enunciated in *Wong Sun,* we find that the now challenged statement was not the result of any prior illegality, but was the product of the defendant's own purge of conscience.

When the police started to question Merlo, they were unaware of any crime having been committed by him in Michigan; it appears from the record that he was cognizant of the fact that the police were not aware of his Michigan crime. Without hesitation on the part of the defendant or solicitation by the police concerning the crime presently charged, the defendant related the shooting of his wife. After having

been given his constitutional warnings, the defendant again, without hesitation, related the killing of his wife. The record is devoid of any showing that the second confession was in any way linked to the first. The defendant's statement was voluntary, and his actions and testimony lead this Court to conclude that the second statement was purged of any prior illegality, if any existed.

The trial court's ruling on the *Walker* hearing complies with the constitutional rights of the defendant. The record discloses no exploitation of the first confession in the taking of the second confession. In the first confession, the law enforcement officers had posed no questions to the defendant concerning the instant crime, as envisioned by *Miranda*. The second confession was not inextricably entwined with the first, as shown by the record and by the trial court's determination in the *Walker* hearing.

In *Commonwealth* v. *Moody* (1968), 429 Pa 30 (239 A2d 409), it was held:

"that where defendant while in custody and without warnings as to his right to remain silent and that anything he said might be used against him confessed to officer that he had killed his wife and thereafter defendant was given warnings  *  *  *  subsequent written confession was not the result of exploitation or prior illegality and was admissible."

The defendant claims that the trial court erred in denying the defendant's motion to dismiss, after the people's opening statement, since the statement failed to state the facts to be relied upon in proving premeditation.

GCR 1963, 507.1 provides:

"Opening Statements:    Before the introduction of any evidence, the attorney for the party who is to commence the evidence shall make a full and fair

statement of his case and the facts he intends to prove."

Comments on this rule are found in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 394:

"Each side is entitled to have the opening statement of the other fairly disclose the nature of the claim or defense being made. What constitutes a fair opening statement is largely a matter within the discretion of the trial court."

In *People* v. *Clayton* (1926), 236 Mich 692, 695, the Court, in considering a similar rule[3] requiring an opening statement by the parties, held that the omission to make such statement was not reversible error when its omission is not shown to have been prejudicial. In another Supreme Court case, *People* v. *Koharski* (1913), 177 Mich 194, 196, the Court said of the former rule:

"We are of the opinion that the rule is directory and that it was promulgated for the purpose of having the plaintiff's case outlined in advance so that the jury could better see the force and the bearing of the evidence as it came in, and while we think it is a proper rule to enforce, we are not prepared to say that the refusal to enforce it is reversible error, where its omission is not shown to have been prejudicial to respondent's case."

In the instant case, the prosecution read the information charging the defendant with murder in the first degree. He then briefly outlined his theory of the case, which reads:

"Now, in brief what we're going to show is that Mr. Merlo walked in the beauty shop in which his

---

[3] "On the trial of a cause it shall be the duty of the plaintiff's counsel, before offering evidence to support the issue on his part, to make a full and fair statement of his case and of the facts which he expects to prove." Circuit Court Rule 24.

wife was working, asked to see her, walked into a
back room with her out of the sight of at least the
rest of the patrons and workers in the beauty shop,
talked to her for a few moments, that Sharon came
back out, began to work on one of her customers,
that she worked on this customer, the defendant then
came out of the back room, walked over and shot her.

"We're going to show that when he walked in the
beauty shop that he had the gun, that when he walked
out of the back room he walked out of the back room
with the intention of killing her; that after he shot
her he fled the scene and was apprehended some time
later in Philadelphia."

Although prior cases have indicated that the fail-
ure to make an opening statement does not constitute
reversible error, the prosecution here did make a
statement.  In view of the prosecution's opening
statement, there was no doubt that the prosecution
would attempt to prove premeditation.  It is obvious
from the indorsed *res gestae* witnesses and this
opening statement that the defense could easily have
surmised the manner in which the element would be
proven.

In conclusion, this defendant was not prejudiced or
surprised by the lack of a more concise statement.

The defendant's claims regarding non-constitu-
tional error are not worthy of extensive treatment.
In the course of the direct examination of defendant,
defense counsel asked several questions regarding
alleged declarations and acts of the victim's mother.
It was in order to rebut such testimony that the
prosecution moved that the deceased's mother be in-
dorsed as a rebuttal witness.  Defendant claims that
the court erred in allowing the prosecution to in-
dorse the victim's mother as a rebuttal witness.  Al-
though we agree that it is a substantial right to have
witnesses indorsed prior to trial, we find that the trial
court did not abuse its discretion under all of the

circumstances, in allowing this witness to testify. *People* v. *Davis* (1955), 343 Mich 348, 361; *People* v. *Keyes* (1968), 9 Mich App 482.

Defendant assigns as error the sufficiency of the evidence presented on the issue of premeditation. A review of the record reveals that there was sufficient testimony which, if believed, would permit the jury to find premeditation.

The murder of his wife by the defendant was overwhelmingly established; at trial, defendant's admissions were substantially identical to statements made in his prior confession.

We have reviewed defendant's other alleged errors and find that they do not show reversible error. There was no miscarriage of justice here.

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, * * * unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

Judgment of conviction affirmed.
All concurred.