PEOPLE v LONG

Docket No. 63102. Decided July 16, 1980. On application by the
    defendant for leave to appeal the Supreme Court, in lieu of
    granting leave to appeal, reversed the judgment of the Court of
    Appeals and ordered the defendant discharged. Rehearing de-
    nied *post,* 1102.

Archie C. Long was convicted by a jury in Jackson Circuit Court,
    James G. Fleming, J., of larceny in a building upon evidence
    that he distracted two cashiers and asked them for various
    amounts of change, which induced them to give him $10 more
    than they received from him. The defendant argued on appeal
    that he should have been charged with obtaining money under
    false pretenses. The Court of Appeals, M. F. Cavanagh, P.J.,
    and Bashara and D. E. Holbrook, Jr., JJ., affirmed in a memo-
    randum opinion (Docket No. 78-218). The defendant requested
    review of the record and the matter was remanded to the Court
    of Appeals for amplification of its decision. In a per curiam
    opinion the Court of Appeals decided that the distinction
    between the crimes of larceny by trick and obtaining property
    under false pretenses turns upon the intent of the owner to
    part with the property and that, because the cashiers did not
    knowingly intend to transfer the "excess" money to the defen-
    dant, his conduct amounts to larceny (Docket No. 47521). In a
    per curiam opinion signed by Justices Kavanagh, Levin, Fitz-
    gerald, and Moody, the Supreme Court *held:*

This case is one of false pretenses. In larceny the owner of
    the thing stolen has no intention to part with his property; in
    false pretenses the owner does intend to part with his property,
    but the intention is the result of fraudulent contrivances. The
    partings with the additional money in this case were induced
    by the defendant's fraudulent representations that he had
    received an inadequate amount of change. It is apparent that
    the partings were voluntary and advertent; at the time of their
    occurrence the partings represented a surrendering of posses-
    sion accompanied by an intention, however hastily or ill-advis-
    edly formed, to transfer title. Because both possession and title
    were intended to be transferred, defendant's offense was that of
    obtaining money under false pretenses. The conduct charged
    against the defendant falls within the legislatively recognized

category of false pretenses; thus marked, it is distinct from larceny.

Reversed and defendant is ordered discharged.

Justice Ryan, joined by Chief Justice Coleman and Justice Williams, dissenting, would apply the well-established general rule which distinguishes the offenses of larceny and false pretenses. "False pretenses" connotes the receiving of the victim's property by a misrepresentation of fact which induces the victim to relinquish voluntarily both possession and title. In the scheme used in this case, the defendant never makes any representation at all, and the victim never realizes that he is losing the money delivered in excess of the correct change. Thus, the victim does not relinquish title to that part of the money that exceeds the correct change. The absence of intent of the victim to pass title renders the taking trespassory, thereby supplying the primary necessary element in larceny which is absent in false pretenses.

93 Mich App 579; 286 NW2d 909 (1979) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Lynn Chard* and *F. Martin Tieber)* for defendant.

PER CURIAM. Defendant was charged with two counts of larceny in a building.[1] On October 19, 1977, he was convicted, as charged, by a jury. He was sentenced to serve from 14 months to 4 years imprisonment on November 4, 1977. We conclude that the charged conduct, as outlined by the evidence introduced at trial, will not sustain the convictions of larceny.

I

Evidence introduced by the prosecution at trial indicated that the defendant was involved in a

---

[1] MCL 750.360; MSA 28.592.

scheme whereby he short-changed two cashiers $10 each. He did so by creating confusion and impliedly representing that he was giving them an amount of money equal to that which he was receiving. By distracting them and asking for various amounts of change, he induced them to give him $10 more than they received from him.

Prior to trial, defendant moved to quash the information on the basis that larceny, as charged, required a taking against the will and without the consent of the owner. Contending that there was a voluntary exchange of money, counsel argued that the proper charge was either obtaining money under false pretenses[2] or larceny by trick[3] rather than larceny in a building. The trial court denied the motion to quash, agreeing with the prosecutor's view that the evidence at the preliminary examination would support the charge of larceny by trick and that the prosecutor had the discretion and power to bring the charge of larceny in a building.

In the Court of Appeals defendant raised two issues, contending first that he had been improperly charged with larceny (the correct charge being obtaining property under false pretenses); and second that if the prosecution could utilize either charge, such unguided discretion, potentially imposing vastly different maximum penalties, would violate due process and equal protection. The Court of Appeals affirmed the defendant's conviction in an unpublished memorandum opinion. Defendant sought our review by request under Administrative Order 1977-4, 400 Mich lxvii. By or-

---

[2] MCL 750.218; MSA 28.415.

[3] The common-law offense of larceny by trick is included in the general larceny statute, MCL 750.356; MSA 28.588. See 3 Michigan Criminal Jury Instructions (Ann Arbor: Institute of Continuing Legal Education), Commentary to CJI 23:5:01, pp 23-43, 23-44.

der of September 26, 1979, we remanded to the
Court of Appeals for amplification of the facts and
the reasons underlying its decision.[4] In its ampli-
fied opinion[5] the Court of Appeals, observing that
the distinction between the crime of larceny by
trick and that of obtaining property under false
pretenses turns upon the intent of the owner to
part with the property, *People v Martin,* 116 Mich
446; 74 NW 653 (1898), concluded:

"In the instant case the cashiers did not knowingly
transfer an extra $10 to the defendant relying on some
false representations of the defendant. Rather, the cash-
iers, believing they had transferred only an amount
equal to that received in making change for the defen-
dant, were induced by trick or artifice of the defendant
to part with possession of the extra $10.

"Taking into consideration the intention of the par-
ties, it is obvious that the cashiers intended only to
exchange various denominations of money with the
defendant *quid pro quo.* The cashiers had no intention
to transfer possession or title to any money in excess of
that received. The defendant, on the other hand, in-
tended to obtain through use of artifice possession of
the extra $10 and intended thereby to relieve the owner
of her possession.

"The absence of intent on the part of the cashiers to
knowingly and voluntarily transfer possession or title to
any money in excess of that received, places the defen-
dant's conduct within the ambit of larceny rather than
obtaining property under false pretenses."

## II

In our view, the Court of Appeals has incor-
rectly construed and applied the rule of *People v
Martin* in distinguishing between larceny and false

---

[4] 407 Mich 873 (1979).

[5] 93 Mich App 579; 286 NW2d 909 (1979).

pretenses. We find this case to be one of false
pretenses.

In *People v Martin,* this Court identified the
distinction between larceny and false pretenses as
follows:

"It is sometimes difficult to determine in a given case
whether the offense is larceny or whether it is a case of
false pretenses. We think the rule to be gathered from
the authorities may be stated to be: In larceny, the
owner of the thing stolen has no intention to part with
his property therein; in false pretenses, the owner does
*intend to part with his property in the thing,* but this
intention is the result of fraudulent contrivances. If the
owner did not part with his property in the thing, but
simply delivered the possession, the ownership remain-
ing unchanged, for the purpose of having the person to
whom the property was delivered use it for a certain
special and particular purpose, for the owner, the title
would not pass, and its felonious conversion would be
larceny. A distinction is made between a bare charge
for special use of the thing, and a general bailment; and
it is not larceny if the owner intends to part with the
property and deliver the possession absolutely, although
he has been induced to part with the goods by fraudu-
lent means. If, by trick or artifice, the owner of prop-
erty is induced to part with the possession to one who
receives the property with felonious intent, the owner
still meaning to retain the right of property, the taking
will be larceny; but if the owner part with not only the
possession, but right of property also, the offense of the
party obtaining the thing will not be larceny, but that
of obtaining the goods by false pretenses. As was said in
*Loomis v People,* [67 NY 322, 329; 23 Am Rep 123
(1876)]:
    " 'There is, to be sure, a narrow margin between a
case of larceny and one where the property has been
obtained by false pretenses. The distinction is a very
nice one, but still very important. The character of the
crime depends upon the intention of the parties, and
that intention determines the nature of the offense. In
the former case, where, by fraud, conspiracy, or artifice,

the possession is obtained with a felonious design, and the title still remains in the owner, larceny is established; while in the latter, where title, as well as possession is absolutely parted with, the crime is false pretenses. It will be observed that the intention of the owner to part with his property is the gist and essence of the offense of larceny, and the vital point upon which the crime hinges and is to be determined.'" 116 Mich 450-451.

The rule noted in *Martin* governs characterization of defendant's offense in the present case.[6] By distracting the cashiers and asking them for various amounts of change, defendant induced them to give him $10 more than they received from him. The partings were induced by defendant's fraudulent representations that he had received an inadequate amount of change. While undoubtedly the cashiers would not have parted with the "additional" sum had they recognized it as such, it is apparent that the partings were voluntary and

---

[6] Similar statements regarding the distinction between these offenses appear at 50 Am Jur 2d, Larceny, § 7, pp 158-159; 32 Am Jur 2d, False Pretenses, § 4, p 182; LaFave & Scott, Criminal Law, § 90, pp 660-665; Michigan Criminal Jury Instructions, Commentary to CJI 23:05:01; 35 CJS, False Pretenses, § 3, pp 804-807.

In *People v Shaw,* 57 Mich 403; 24 NW 121 (1885), this Court characterized the taking of money in a card trick fraud as larceny, observing that "fraud will supply the place of trespass in the taking, and so make [a] conversion felonious". In so concluding we reasoned that the defrauded party was induced by trick to part with possession of his money. Title, however, did not pass. Thus, subsequent conversion made the conduct larcenous. Fraud of this nature with the use of cards has traditionally been regarded as larceny by trick. LaFave & Scott, *supra,* pp 664-665. *Martin, supra,* also presents larceny by trick facts (defendant, obtaining money upon the fraudulent representation that she would use it to purchase bicycles, absconds). The present case differs from *Shaw* and *Martin* in that the cashiers, induced by fraudulent representation, intended transfer of an unrestricted property interest.

The conduct in which defendant engaged in this case has been reported as larceny by some authorities. See, *e.g.,* 52A CJS, Larceny, § 36, p 465; *Howell v State,* 28 Ala App 249; 182 So 96 (1938); and 26 ALR 381, 386. We do not find in these authorities viable distinction from or exception to the controlling rule of *Martin.*

advertent. At the time of their occurrence, the partings represented a surrendering of possession accompanied by an intention, however hastily or ill-advisedly formed, to transfer title. Because both possession and title were intended to be transferred, defendant's offense was that of obtaining money under false pretenses.

The creation of the offense of false pretenses by statute had its historical origins in the lawmaker's need to fill a void in the common law which existed by virtue of the fact that common-law larceny did not extend to punish the party who, without taking and carrying away, had obtained both possession and title to another's property.[7] Against this historical background, our Legislature early chose to recognize the offense.[8] The conduct charged against defendant falls within the legislatively recognized category; thus marked, it is distinct from larceny.

Reversed and defendant is ordered discharged.

KAVANAGH, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred.

---

[7] LaFave & Scott, *supra,* p 655; and Perkins, Criminal Law (2d ed), pp 296-297.

[8] The initial enactment (1846 Rev Stats, ch 154, § 39) proscribed not only obtaining variously described property by false pretense but also "obtain[ing] the signature of any person to any written instrument, the making whereof would be punishable as forgery". The statute has early been described as having the purpose of punishing cheats. *People v Wakely,* 62 Mich 297, 302; 28 NW 871 (1886). The Legislature amended the statute several times prior to our consideration in *People v Martin,* 116 Mich 446; 74 NW 653 (1898). Subsequent to *Martin,* the statute was again amended by 1915 PA 245 so as to additionally proscribe obtaining "the use of any instrument, facility or article or other valuable thing or service" by false pretenses. The statute has not changed significantly since that time. The common-law concepts of transfer of title and possession to which we referred in *Martin* are noteworthy in pointing out the delineation between larceny (with its common-law origin) and the developing statutory offense of false pretenses. While serving this function well, these concepts do not pertain to definition of the statutory offense of false pretenses, a matter committed to legislative prerogative.

RYAN, J. I dissent.

The Court of Appeals, on remand, properly applied the well-established general rule which distinguishes the offenses of larceny and false pretenses, as this Court stated the rule in *People v Martin,* 116 Mich 446, 450-451; 74 NW 653 (1898).

The essence of the *Martin* distinction can be extracted thus:

> "We think the rule to be gathered from the authorities may be stated to be: *In larceny, the owner of the thing stolen has no intention to part with his property therein; in false pretenses, the owner does intend to part with his property in the thing, but this intention is the result of fraudulent contrivances.* If the owner did not part with his property in the thing, but simply delivered the possession, the ownership remaining unchanged, for the purpose of having the person to whom the property was delivered use it for a certain special and particular purpose, for the owner, the title would not pass, and its felonious conversion would be larceny. A distinction is made between a bare charge for special use of the thing, and a general bailment; and it is not larceny if the owner intends to part with the property and deliver the possession absolutely, although he has been induced to part with the goods by fraudulent means. *If, by trick or artifice, the owner of property is induced to part with the possession to one who receives the property with felonious intent, the owner still meaning to retain the right of property, the taking will be larceny; but if the owner part with not only the possession, but right of property also, the offense of the party obtaining the thing will not be larceny, but that of obtaining the goods by false pretenses."* (Emphasis supplied.) 116 Mich 450.

In the case before us the scheme employed by the defendant is known as "ringing the changes" and is analyzed as follows:

" 'Ringing the changes', a trick frequently practiced on shopkeepers and salesmen, is effected by tendering a large bill or coin in payment of a small purchase, and, after the correct change has been given, asking for other change and repeating the request until, in the confusion of mind created by so many operations, the thief obtains more money than he should. This is held to be larceny, notwithstanding in each operation the shopkeeper or salesman voluntarily delivered the money asked for, *since it is obvious that he intended to part with the title to only such money as constituted the correct change."* (Emphasis supplied.) 52A CJS, Larceny, § 36, p 465.

Stated another way, the literal meaning of "false pretense" connotes the receiving of the victim's property by virtue of a misrepresentation of fact which induces the victim to voluntarily relinquish both possession and title. In the "ringing the changes" scheme, the accused never makes any representation to the victim at all, and the victim never realizes that he is losing the money delivered in excess of the correct change. Thus, while the victim voluntarily relinquishes possession, he does not relinquish title to that portion of the money that exceeds the correct change. This absence of intent of the victim to pass title renders the taking trespassory,[1] thereby supplying the pri-

---

[1] In Perkins, Criminal Law (2d ed), pp 245-246, the term "trespassory taking", as it is used in relation to larceny, is explained as follows:

"It must be emphasized that a 'trespassory taking' of a chattel has no reference to a trespass on or to real estate. Such a trespass is neither required, nor sufficient, for larceny. An altogether different kind of trespass is involved here—the *trespass de bonis asportatis* (trespass for goods carried away), to use the ancient label. For this trespass it is necessary to find that someone other than the wrongdoer had possession of the money or chattel, and that this possession was brought to an end by a taking by the wrongdoer (or by another at his instigation), under such circumstances as to amount in law to trespass. In general it may be said that the taking of possession from another is always a trespass unless the other consents thereto, or there is some special authority for the taking—as for example where

mary necessary element in larceny which is absent in false pretenses. All authorities concur in substantiating the foregoing analysis.[2]

For the foregoing reasons, in lieu of granting leave to appeal, I would affirm the decision of the Court of Appeals.

COLEMAN, C.J., and WILLIAMS, J., concurred with RYAN, J.

---

a sheriff takes a chattel under a writ of attachment. It may be added that consent obtained by fraud, force or intimidation is the same as no consent so far as trespass is concerned (if fraud does not result in the acquisition of title)."

See also *id.,* pp 246-248.

[2] *Howell v State,* 28 Ala App 249; 182 So 96 (1938); see also 32 Am Jur 2d, False Pretenses, § 4, p 182; 50 Am Jur 2d, Larceny, §§ 2, 7, 26-27; 12 Mich Law & Practice, False Pretenses, § 1, pp 313-314; 15 Mich Law & Practice, Larceny, §§ 1-2, pp 370-373; 3 Gillespie, Michigan Criminal Law & Procedure (1978 rev ed) § 1796, p 844. Accord, *United States v Johnson,* 575 F2d 678, 680 (CA 8, 1978); *United States v Rogers,* 289 F2d 433, 438-439 (CA 4, 1961); *United States v Posner,* 408 F Supp 1145, 1150-1151 (D Md, 1976).