PEOPLE v MALACH

PEOPLE v CARRIS

Docket Nos. 151224, 151405. Submitted August 11, 1993, at Lansing.
Decided November 1, 1993, at 9:10 A.M. Leave to appeal sought.

Melinda Malach and Matthew S. Carris were charged in the
Oakland Circuit Court with first-degree felony murder. Follow-
ing a jury trial, each was convicted of involuntary manslaugh-
ter and sentenced to four to fifteen years' imprisonment, Steven
N. Andrews, J. The defendants had arranged to sell cigarettes
to the victim at below market price. During the transaction,
Malach and Carris were seated in Malach's car, with the
engine running, and the victim was standing outside on the
driver's side. The victim reached inside the car, gave money to
Carris, and was given two cartons purportedly containing ciga-
rettes, but which were actually filled with paper. The victim,
suspecting the switch, said "wait a minute." Instead of waiting,
Malach put the car in gear and accelerated. The victim initially
hung onto the car, but then fell off. The victim died from the
injuries sustained. The defendants filed separate appeals, alleg-
ing that their crime constituted obtaining money by false
pretenses, not larceny, and therefore they should not have been
charged with felony murder arising out of a larceny of any
kind. The appeals were consolidated.

The Court of Appeals held:

1. Obtaining money by false pretenses is not "larceny of any
kind" for purposes of the felony-murder statute, MCL 750.316;
MSA 28.548. Obtaining money by false pretenses requires a
knowing false representation of fact, done with the intent to
deceive, which causes detrimental reliance on the representa-
tion. Larceny is the taking and carrying away of the property
of another with felonious intent and without the owner's con-
sent. If the owner intends to keep title but part with possession,
the crime is larceny. If the owner intends to part with both

REFERENCES

Am Jur 2d, Homicide §§ 71-87; Larceny § 7; Trial §§ 1178-1182.

Attempts to commit offenses of larceny by trick, confidence game,
false pretenses, and the like. 6 ALR 3d 241.

title and possession, albeit for the wrong reasons, the crime is false pretenses.

2. The underlying crime in this case was taking money by false pretenses, not larceny, and, therefore, could not form the basis for the felony-murder charge. The evidence did not support a charge of larceny by trick or larceny by conversion. The defendants' motions for a directed verdict with regard to the felony-murder charge should have been granted.

3. Carris' motion to quash the information should have been granted because, as a matter of law, the offense of obtaining money by false pretenses could not support a charge of felony murder.

4. The trial court erred in granting the prosecutor's motion to amend the informations to base the felony-murder charges on larceny by false pretenses instead of larceny of any kind. The ruling was based on the erroneous legal ruling that taking money by false pretenses was larceny by false pretenses.

5. Because no larceny was proven, the felony-murder charges should not have been submitted to the jury. The defendants' convictions must be reversed and the cases remanded for new trials.

6. The trial court did not err in denying Carris' motion to suppress his second confession. The second confession was not the product of his illegal arrest or of his first confession, which occurred before he was informed of his rights, and was an independent act of free will.

7. The trial court erred in denying Carris' request for an instruction regarding negligent vehicular homicide.

Reversed and remanded.

1. HOMICIDE — FELONY MURDER — OBTAINING MONEY BY FALSE PRETENSES — LARCENY.

  The offense of obtaining money by false pretenses does not constitute larceny of any kind for purposes of the felony-murder statute (MCL 750.218, 750.316; MSA 28.415, 28.548).

2. LARCENY — INTENT OF VICTIM.

  Larceny is the taking and carrying away of the property of another with felonious intent and without the owner's consent; if the owner intends to keep title but parts with possession as a result of trick or artifice by one who receives the property with felonious intent, the crime is larceny (MCL 750.356 *et seq.*; MSA 28.588 *et seq.*).

3. FALSE PRETENSES — INTENT OF VICTIM.

  The offense of obtaining money by false pretenses requires a

knowing false representation of fact, done with the intent to deceive, which causes detrimental reliance on the representation; if the owner of goods intends to part with both the title and possession of the goods, although induced to part with the goods by fraudulent means, the crime is false pretenses (MCL 750.218; MSA 28.415).

4. CRIMINAL LAW — JURY INSTRUCTIONS — PREJUDICE — COMPROMISE VERDICT.

There is always prejudice where a jury is permitted to consider a charge unwarranted by the proofs because the defendant's chances of acquittal with regard to any valid charge are decreased substantially by the possibility of a compromise verdict.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Richard H. Browne,* Acting Chief, Appellate Division, and *Anica Letica,* Assistant Prosecuting Attorney, for the people.

*Steven R. Sonenberg,* for Melinda Malach.

*Stuart L. Young,* for Matthew S. Carris.

Before: HOOD, P.J., and CAVANAGH and R. J. TAYLOR,* JJ.

HOOD, P.J. Defendants each were charged with one count of first-degree felony murder, MCL 750.316; MSA 28.548. Following a jury trial, each was convicted of involuntary manslaughter, MCL 750.321; MSA 28.553, and sentenced to a term of four to fifteen years. They appeal as of right.[1] We reverse and remand.

Defendants had arranged to sell two cartons of cigarettes to the victim and another person at far below market price. During the transaction, defendant Malach was seated behind the wheel of her

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] These cases were consolidated on appeal because they arise out of the same facts.

car and defendant Carris was seated next to her. The engine was running. The two purchasers were standing outside the car on the driver's side.

The victim reached inside the car and gave the money to Carris, who then reached under the seat and gave the victim two cartons purportedly containing cigarettes, which were actually filled with paper. The victim took the cartons but, apparently suspecting the switch, said "wait a minute." Instead of waiting, Malach put the car in gear and accelerated. The victim hung onto the car, but eventually fell off as Malach made a turn. He later died from the injuries sustained.

Both defendants argue that the cigarette carton scam constituted obtaining money by false pretenses, not larceny, and that, therefore, they should not have been charged with felony murder arising out of a "larceny of any kind." We agree.

Both defendants moved for a directed verdict with regard to the felony-murder count. Carris also moved to quash the felony-murder indictment and objected to allowing the prosecutor to amend the information to base the felony-murder count on "larceny by false pretenses" instead of "larceny of any kind." All these arguments, however, have the same underlying legal question: Whether obtaining money by false pretenses constitutes "larceny of any kind" for purposes of the felony-murder statute. We hold that it does not.

A murder committed during the perpetration of, among other things, "larceny of any kind" is first-degree murder and punishable by life imprisonment. MCL 750.316; MSA 28.548. Even a misdemeanor larceny has been found sufficient for purposes of this statute. *People v Williams,* 129 Mich App 362, 368; 341 NW2d 143 (1983), rev'd on other grounds 422 Mich 381; 373 NW2d 567 (1985) (use of the defendant's confession); see also *People v*

*Hawkins,* 114 Mich App 714, 717; 319 NW2d 644 (1982).

Larceny is the taking and carrying away of the property of another, done with felonious intent and without the owner's consent. See *People v Ainsworth,* 197 Mich App 321, 324; 495 NW2d 177 (1992). Obtaining money by false pretenses, on the other hand, requires a knowing false representation of fact, done with intent to deceive, which causes detrimental reliance on the representation. *In re People v Jory,* 443 Mich 403, 412; 505 NW2d 228 (1993); *People v Flaherty,* 165 Mich App 113, 119; 418 NW2d 695 (1987); see also MCL 750.218; MSA 28.415. False pretenses and larceny are defined in separate chapters of the Penal Code. See MCL 750.356 *et seq.*; MSA 28.588 *et seq.* (chapter LII—Larceny); compare MCL 750.218; MSA 28.415 (chapter XXXVI—False Pretenses and False Representation).

We acknowledge that obtaining money by false pretenses is often referred to as "larceny by false pretenses." See *Jory, supra* at 410; see also *Flaherty, supra* at 119. However, in light of the analysis that follows, we conclude that this is merely a misnomer.[2]

In *People v Long,* 409 Mich 346; 294 NW2d 197 (1980), our Supreme Court explained the historical difference between the crimes of larceny and obtaining money by false pretenses:

> "*In larceny, the owner of the thing stolen has no intention to part with his property therein; in false pretenses, the owner does intend to part with his property in the thing, but this intention is the result of fraudulent contrivances.* If the owner did not part with his property in the thing, but simply

---

[2] We reject as unpersuasive the prosecutor's argument that false pretenses must be a form of larceny because, under MCL 767.69; MSA 28.1009, it can be charged in the same indictment.

delivered the possession, the ownership remaining unchanged, for the purpose of having the person to whom the property was delivered use it for a certain special and particular purpose, for the owner, the title would not pass, and its felonious conversion would be larceny. A distinction is made between a bare charge for special use of the thing, and a general bailment; and *it is not larceny if the owner intends to part with the property and deliver the possession absolutely, although he has been induced to part with the goods by fraudulent means.* If, by trick or artifice, the owner of property is induced to part with the possession to one who receives the property with felonious intent, the owner still meaning to retain the right of property, the taking will be larceny; but *if the owner part with not only the possession, but right of property also, the offense of the party obtaining the thing will not be larceny, but that of obtaining the goods by false pretenses.*" [*Id.,* at 350, quoting *People v Martin,* 116 Mich 446, 450; 74 NW 653 (1898) (emphasis added).]

The distinction between the two offenses therefore depends entirely upon the intent of the victim: if the owner of the goods intends to keep title but part with possession, the crime is larceny; if the owner intends to part with both title and possession, albeit for the wrong reasons, the crime is false pretenses. *Long, supra* at 350-351 (relying on *Martin, supra* at 450-451); see also *People v Jones,* 143 Mich App 775, 780; 372 NW2d 657 (1985). In *Long, supra* at 351-352, for example, the defendant tricked a cashier into voluntarily giving him more change than he was entitled to; the offense was obtaining money under false pretenses. In *Jones, supra* at 776-777, 780, on the other hand, the defendant took money from a cashier by sleight of hand; the crime was larceny because he took the money without her consent. As noted in *Long, supra* at 352:

The creation of the offense of false pretenses by statute had its historical origins in the lawmaker's need to fill a void in the common law which existed by virtue of the fact that common-law larceny did not extend to punish the party who, without taking and carrying away, had obtained both possession and title to another's property. Against this historical background, our Legislature early chose to recognize the offense. The conduct charged against defendant falls within the legislatively recognized category; thus marked, it is distinct from larceny.

See also *Jory, supra* at 412.

In this case, the trial court found that the victim clearly intended to transfer both title and possession of the money in exchange for what he believed to be two cartons of cigarettes. That intent was obviously "the result of fraudulent contrivances" and was induced "by fraudulent means." *Long, supra* at 350. However, "*[a]t the time of [its] occurrence,*" the victim surrendered possession with the intent, "however, hastily or ill-advisedly formed, to transfer title." *Id.* at 352 (emphasis added). The underlying crime was, therefore, taking money by false pretenses, not larceny, and for that reason could not form the basis for a felony-murder charge.

Defendants' motions for a directed verdict should have been granted because, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the elements of the crime of felony murder—specifically, the underlying "larceny of any kind"—proven beyond a reasonable doubt. See *People v Daniels,* 192 Mich App 658, 665; 482 NW2d 176 (1992). We note that the trial court did not challenge defendants' argument that the crime committed was obtaining money by false pretenses. In

fact, the court specifically found—and the prosecutor has not cross appealed from that finding—that the decedent intended to transfer both title and possession of the cash and that, therefore, the evidence did not support a charge of larceny by trick or of larceny by conversion. Rather, the court solely relied on the fact that many decisions refer to this crime as "larceny by false pretenses." This, we conclude, is an unfortunately confusing misnomer.

Carris' motion to quash the information also should have been granted because, as a matter of law, the offense of obtaining money by false pretenses could not support a charge of felony murder. See *People v Thomas,* 438 Mich 448, 452; 475 NW2d 288 (1991) (motion to quash based on a question of law is reviewed for error, not abuse of discretion). Again, we note that the trial court specifically rejected any argument that the facts could support a charge of larceny by conversion or larceny by trick and that no cross appeal was taken from that finding.

Similarly, the prosecutor's motion to amend the information should have been denied. Again, the court's ruling was based upon the erroneous legal ruling that taking money by false pretenses was "larceny by false pretenses." The trial court concluded that defendants were not and could not be surprised by this charge because even they argued that false pretenses was the crime shown by the evidence. The prosecutor should not have been allowed to amend the information because, as discussed above, false pretenses is not larceny and, therefore, is not a proper underlying offense for a conviction of felony murder.

Because no larceny was proven, the charge of felony murder should not have been submitted to the jury. "[W]here a jury is permitted considera-

tion of a charge unwarranted by the proofs there is *always* prejudice because a defendant's chances of acquittal on any valid charge [are] substantially decreased by the possibility of a compromise verdict." *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 (1975) (emphasis added). Therefore, both defendants' convictions must be reversed. We address the remaining issues raised, however, to avoid confusion upon retrial.

Carris argues that the trial court should have granted his motion to suppress his confession. We disagree.

Carris was arrested admittedly without probable cause. He was questioned before being advised of his rights, and incriminated himself. He was then told that that statement could not be used, was read his rights, and was asked whether he wished to incriminate himself again. He did.

Generally, when an "unlawful detention has been employed as a tool to directly procure any type of evidence from a detainee" such evidence shall be excluded as the fruit of the poisonous tree. *People v Mallory,* 421 Mich 229, 240-241, 243, n 8; 365 NW2d 673 (1984). However, "not all evidence acquired directly or indirectly from a detainee during a[n] . . . unlawful detention will be procured by exploiting that detention." *Id.* at 241. The key "is whether there was a causal connection between the unlawful detention and the statement." *Id.* at 243, n 8. Relevant factors include: "(1) the time lapse between the arrest and the statement, (2) the flagrancy of official misconduct, (3) any intervening circumstances, and (4) any antecedent circumstances, *i.e.,* events occurring before the arrest." *Id.* Examples of evidence that will not be excluded as the fruit of an illegal arrest are: voluntary statements made shortly after arrest; physical evidence inadvertently discov-

ered in the detainee's possession (absent a general plan or pattern to marshal evidence against him); and evidence obtained by means sufficiently distinguishable to be purged of the taint of the unlawful detention. *Id.* at 241.

For example, in *People v Feldmann,* 181 Mich App 523, 528-529; 449 NW2d 692 (1989), a panel of this Court upheld the admission of the second of two confessions given after an unlawful arrest. The Court found that the statement had been made eight hours after the arrest, that initially failing to tell the defendant that she was free to leave was not flagrant misconduct, and that the first confession was induced by a mistaken expectation of immunity and by instructions from her codefendant, not by the inherent coerciveness of her detention. *Id.* at 529-530. The Court agreed with the trial court that the defendant's confession was voluntary. *Id.* at 530.

Similarly, in *People v Merlo,* 23 Mich App 694, 699; 179 NW2d 222 (1970), a defendant's second confession was found not to be "the result of any prior illegality, but was the product of the defendant's own purge of conscience." The defendant had initially confessed about one crime when, before being read his rights, he had been asked about a different crime. *Id.* at 698-699. He confessed again after being advised of his rights. *Id.* at 699-700. This Court agreed with the trial court that there was no evidence that the first confession was linked to the second or that the first confession was exploited in obtaining the second. *Id.* at 700.

In contrast, in *People v Grevious,* 119 Mich App 403, 410-411; 327 NW2d 72 (1982), this Court reversed a conviction based upon a statement taken from a defendant-prisoner. The first statement was taken without a warning regarding the

defendant's rights. *Id.* at 406-407. A second statement was taken two days later, after the defendant had been read his rights. *Id.* at 408. This Court found that the second confession was causally related to the first and suppressed it. *Id.* at 410. However, the panel did not have the benefit of the *Mallory* factors, *supra* at 243, n 8, and the decision is, therefore, of questionable validity.

Here, the trial court found that Carris' second confession was made less than six hours after his arrest; that the misconduct of the police was not flagrant; that Carris was advised that his first confession could not be used and was then read his rights before the second confession; and that, even before he was arrested, Carris had telephoned one of the officers and left a message indicating that he wished to talk. The trial court concluded that the second confession was not the product of the illegal arrest or of the first confession, but, rather, was an independent act of free will. We find that the trial court's decision to admit the confession was not clearly erroneous.

Lastly, Carris argues that the trial court erred in denying his request for an instruction on negligent vehicular homicide. We agree.

"[W]hen properly requested, a trial court should instruct a jury on appropriate lesser included misdemeanors if a rational view of the evidence could support a verdict of guilty of the misdemeanor and not guilty on the felony, [provided that] the defendant has proper notice or has made the request, and the instruction would not result in confusion or injustice." *People v Taylor,* 195 Mich App 57, 62; 489 NW2d 99 (1992) (relying on *People v Stephens,* 416 Mich 252, 261-265; 330 NW2d 675 [1982]). Failure to give such an instruction is an abuse of discretion if a reasonable person would find no justification or excuse for the ruling made.

Further, the error "cannot be held harmless [where] the jury rejected the primary charge and found defendant guilty of the least serious charge it was instructed on." *Taylor, supra* at 63; see also *People v Beach,* 429 Mich 450, 490-494; 418 NW2d 861 (1988) (error is harmless if the jury rejects a lesser included offense greater than the offense whose instruction was refused). Negligent vehicular homicide is a lesser included offense of involuntary manslaughter. *People v McIntosh,* 400 Mich 1, 6-8; 252 NW2d 779 (1977); see also MCL 750.325; MSA 28.557.

Here, the trial court gave a negligent vehicular homicide instruction with regard to Malach but refused one with regard to Carris. The court very succinctly stated "[n]o, denied. [Carris] had nothing to do with it, the driving negligently. The sole reason would have been her own. Denied." However, seconds earlier, the trial court had agreed to charge Carris with aiding and abetting involuntary manslaughter arising out of Malach's grossly negligent driving. The court stated that "[i]n a review of the evidence, a reasonable jury could find that the defendant Carris did indicate to the defendant Malach to go when seeing the victim inside the car, which did aid or encourage the type of driving that ensued in which death resulted. Therefore, . . . I will charge involuntary manslaughter as to the defendant Carris." We fail to see any justification or excuse for ruling that Carris could aid or encourage grossly negligent driving but not purely negligent driving. The trial court abused its discretion in refusing Carris' request for a negligent homicide instruction.

Reversed and remanded for a new trial. We do not retain jurisdiction.