# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

WILLIAM LATRAIL CROSKEY,

Defendant-Appellee.

UNPUBLISHED
September 22, 2016

No. 327938
Ingham Circuit Court
LC No. 15-000098-FH

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant, William Croskey, and two codefendants, Anthony Dockery and Kenrick Moore, were charged with unarmed robbery, MCL 750.530, and bound over to circuit court on that charge. Croskey and Moore filed motions to quash the information, arguing that their underlying conduct was better characterized as false pretenses, not larceny. Therefore, they claimed, there was insufficient evidence to support a bindover on unarmed robbery, which requires larceny. The circuit court agreed and granted their motions. The prosecution appeals as of right the circuit court's June 5, 2015 order of dismissal as it relates to Croskey. We reverse and remand for reinstatement of the charge against Croskey.

Hyun Jung Kim arranged to purchase one pound of marijuana from Moore for $2,000 near a dormitory on Michigan State University's campus. Kim waited for Moore to arrive, retrieved the $2,000 from his dormitory room, and handed the money to Moore who had exited a vehicle. Moore took the money and got back in the vehicle, and the driver of the vehicle attempted to drive away. As the vehicle began to drive away, Kim grabbed onto the window in hopes of retrieving his money. After dragging Kim for quite a distance, the vehicle stopped, and the driver of the vehicle exited and began punching Kim. Kim, while protecting himself from the punches, got into the vehicle and attempted to drive it away but crashed into an apartment building. Croskey, the defendant in this case, was eventually arrested in this matter and admitted his involvement as the driver of the vehicle. According to a detective who interviewed him, Croskey admitted that he was paid to drive the vehicle that night for what he thought was "a drug deal," that when Kim grabbed onto the vehicle he knew "somebody was getting robbed or somebody had robbed somebody," that he punched Kim several times in what he claimed was self-defense, that he ran away from police and took off layers of clothes in hopes of concealing his identity from police, and that he had told his girlfriend to report the vehicle that he was driving (her vehicle) as stolen. Croskey and his codefendants were charged with unarmed

-1-

robbery, MCL 750.530, and the district court, in a written opinion, bound over each defendant as charged.

Croskey subsequently filed a motion to quash, arguing that the district court's decision constituted an abuse of discretion because, even under an aiding-and-abetting theory, he did not have knowledge of Moore's intent to rob the victim nor intend to rob the victim himself. The prosecution responded, pointing to the fact that Croskey drove the codefendants to and from the scene, admitted believing "somebody had just robbed somebody," and physically fought Kim. The circuit court agreed with the defense and granted the motion. In doing so, it explained, in full, as follows:

> Appears by looking at the totality of the circumstances here, the evidence presented at preliminary examination, the co-defendant Moore's decision to turn it into a robbery was unilateral and unknown to this defendant. While [the prosecutor] points out what I find to be a compelling argument in terms of aiding and abetting, if you look at the plain letter of the law, Black's dictionary, in fact, the definition of aid and abet says, to assist or facilitate the commission of a crime or to promote its accomplishment.
>
> It doesn't appear that for this particular charge this defendant had anything to do with this, did not know, participate, plan, communicate, work with any other co-defendant for this charge of unarmed robbery and he was there for a very simple drug deal. That, it appears, he participated and knew about.
>
> Now, as I said, it has to be a natural consequence, but this was one, from his standpoint, he had no intent, did nothing in furtherance of, and actually seems surprised, didn't facilitate in that or promote its accomplishment. Arguably, I understood where the people are coming from, but on this record I'm granting this motion.

This appeal followed.

On appeal, the prosecution argues that the circuit court erred in granting Croskey's motion to quash because it presented sufficient circumstantial evidence of Croskey's knowledge of Moore's intent to rob Kim. Specifically, the prosecution contends that the circuit court erred in usurping the role of the jury to determine whether Croskey intended to rob Kim or was truly ignorant of Moore's intent to rob Kim as he claimed. Croskey argues that its decision should be affirmed because he did not intend to rob the victim or know of Moore's intent to do so and because the three codefendants' underlying conduct was better characterized as false pretenses, not larceny. We agree with the prosecution that the circuit court erred in usurping the role of the jury and disagree with Croskey that the codefendants' underlying conduct was better characterized as false pretenses.

Croskey was charged with unarmed robbery pursuant to MCL 750.530(1), which provides as follows: "A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against a person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by

imprisonment for not more than 15 years." The phrase " 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during the commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2). Larceny is the intentional taking and carrying away of the property of another with the intent to permanently deprive and without consent. *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999). To convict under an aiding and abetting theory, the prosecution must prove that the crime was committed by the defendant or another person, that the defendant acted or encouraged in a manner that assisted the commission of the crime, and that the defendant intended the commission of the crime or knew that the principle intended its commission. *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004).

In order to bind a defendant over for a trial on a charge of unarmed robbery, a district court must determine that probable cause exists to believe that unarmed robbery has been committed and that defendant is the individual who committed it. MCR 6.110(E). "Probable cause exists where the court finds a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense charged." *People v Orzame*, 224 Mich App 551, 558; 570 NW2d 118 (1997). Probable cause does not require that the prosecution prove each element of a crime beyond a reasonable doubt; rather, probable cause requires that the prosecution prove some "evidence of each element of the crime charged or evidence from which the elements may be inferred." *People v Flowers*, 191 Mich App 169, 179; 477 NW2d 473 (1991). Once he or she has been bound over on the charged offenses for trial, a defendant may move to quash the district court's bindover before the circuit court. "The circuit court reviews the entire record of the preliminary examination to determine whether the district court's bindover decision constituted an abuse of discretion. This Court reviews de novo the circuit court's determination whether the district court abused its discretion." *People v McKinley*, 255 Mich App 20, 25; 661 NW2d 599 (2003).

First, it is apparent that the circuit court usurped the role of the district court at preliminary examination and of the jury at trial in granting Croskey's motion to quash. Specifically, the court concluded as follows: "It doesn't appear that for this particular charge this defendant had anything to do with this, did not know, participate, plan, communicate, work with any other co-defendant for this charge of unarmed robbery and he was there for a very simple drug deal." This conclusion—in essence, a credibility determination—was obviously improper. In reaching a decision on a defendant's motion to quash his or her bindover, it is the district court, not the circuit court, that is able to view the witnesses and "has the duty to pass judgment on credibility of witnesses as well as the weight and competency of the evidence[.]" *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000). By accepting Croskey's position that he did not have "anything to do with this, did not know, participate, plan, communicate, work with any other co-defendant for this charge of unarmed robbery," the circuit court went well beyond its role and gave no deference to the district court's ruling in this regard. "Even if the evidence conflicts or reasonable doubt exists concerning the defendant's guilt, if the prosecutor shows probable cause that the defendant committed a felony, the district court is *required* to bind over the defendant and leave those issues for the trier of fact." *People v Baugh*, 243 Mich App 1, 5; 620 NW2d 653 (2000) (emphasis added); see also *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999) (providing that "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented."). Here, a reasonable juror certainly could conclude that, in light of

-3-

Croskey's role in driving to the parking lot without marijuana, driving away from Kim despite his attempts to stop the car after not receiving anything in exchange for several thousand dollars, and exiting the vehicle and fighting Kim to prevent him from obtaining his money, Croskey was well aware of Moore's intent or intended to rob Kim. Accordingly, the circuit court erred in concluding that the district court's bindover decision constituted an abuse of discretion.

Nevertheless, we must still address Croskey's argument that the codefendants' conduct was better characterized as false pretenses, not larceny. As stated above, larceny is the intentional taking and carrying away of the property of another with the intent to permanently deprive and without consent. *Cain*, 238 Mich App at 120. False pretenses, on the other hand, requires a false representation, the defendant's knowledge of the falsity, the use of that falsity with the intent to deceive, and detrimental reliance. *People v Wogaman*, 133 Mich App 823, 826; 350 NW2d 816 (1984); see also MCL 750.218. They differ in that larceny requires that the owner of property not intend to part with property while false pretenses requires that the owner intend to part with the property on the basis of fraudulent contrivances. *People v Long*, 409 Mich 346, 350; 294 NW2d 197 (1980). "The distinction between the two offenses therefore depends entirely upon the intent of the victim: if the owner of the goods intends to keep title but part with possession, the crime is larceny; if the owner intends to part with both title and possession, albeit for the wrong reasons, the crime is false pretenses." *People v Malach*, 202 Mich App 266, 271; 507 NW2d 834 (1993). Consequently, a defendant who obtains temporary, but not absolute, possession of property and uses that temporary possession of the property to carry it away with the intent to permanently deprive has committed larceny, not false pretenses. *Id*. at 270-271.

Applying those rules to the facts of this case, we conclude that the prosecution presented sufficient "evidence of each element of the crime charged or evidence from which the elements may be inferred." *Flowers*, 191 Mich App at 179. In our view, there was sufficient evidence presented by the prosecution to prove that Kim, the owner of the money, did not intend to permanently give Moore title to the money when he handed it over. Rather, he only intended to give Moore possession of the money with title being dependent upon receiving something, i.e., marijuana, in return. However, because nothing was given to Kim in exchange for the money, Moore's possession was temporary, not absolute. Consequently, under *Malach*, Moore, as well as his codefendants, committed larceny, not false pretenses. 202 Mich App at 270-271.

On appeal, Croskey understandably relies heavily on the factual similarities between this case and *Malach*. In that case, codefendants arranged to sell cartons of cigarettes to the victim but instead sold him cartons actually filled with paper. *Malach*, 202 Mich App at 268-269. "[S]uspecting the switch," the victim grabbed onto the codefendants' vehicle, eventually fell off, and died from his injuries. *Id*. at 269. The codefendants were charged with first-degree felony murder, MCL 750.316, but argued that the underlying felony, larceny, was actually conduct constituting false pretenses, a misdemeanor, not larceny. *Id*. The circuit court disagreed, but this Court reversed. *Id*. This Court agreed that the underlying crime was false pretenses, not larceny, because the victim had surrendered title of the money during the transaction. *Id*. at 272.

While the facts of *Malach* and the facts of this case are admittedly similar, we are not persuaded by Croskey's argument that *Malach* controls the outcome of this case. In *Malach*, the codefendants transferred cartons of paper in exchange for money. In this case, on the other hand,

Moore did not transfer anything in exchange for money.  Rather, Moore was given temporary, but not absolute, access to the money.  Moore and his codefendants, including Croskey, then used that temporary access to carry it away thus completing the larceny.  A jury could reasonably infer that Kim intended to transfer possession, not title, of the money in the absence of the exchange.  While this factual disparity is discrete, it is nevertheless crucial, and we find it dispositive in the case at bar.  Had Moore handed Kim a duffle bag of something other than marijuana, for example, we may well have reached a different conclusion under *Malach*.  But, he did not.

Accordingly, because the prosecution presented sufficient evidence of each element of the charged offense at preliminary examination, we reverse the circuit court's June 5, 2015 order of dismissal and remand for reinstatement of the charge against Croskey.

Reversed and remanded.  We do not retain jurisdiction.


/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien