THE STATE OF MONTANA, Plaintiff and Respondent, *v.*
WILLIAM LOVE, Defendant and Appellant.

No. 11369.
Decided May 7, 1968.
440 P.2d 275.

Jerome J. Cate (argued), Billings, for appellant.

Forrest H. Anderson, Atty. Gen., Michael T. Greely, Asst. Atty. Gen. (argued), Helena, John L. Adams, Jr., Harold F. Hanser, Billings, for respondent.

MR. JUSTICE JOHN C. HARRISON, delivered the Opinion of the Court.

This appeal arises from a judgment of conviction for the crime of obtaining property by false pretenses.

The appellant, who describes himself as a wholesale car dealer, through the use of what is called an "automobile bank draft" obtained possession of a 1961 Volkswagen owned by a Mr. and Mrs. Alan Curtis of Billings, Montana. The draft was in the amount of $800.00 and drawn on the West Fargo Bank of Fargo, North Dakota. The testimony of the Curtises was that they advertised the Volkswagen for sale in the local paper and as a result of the ad received a call from the appellant asking to see and try the car. Mr. Curtis picked him up and allowed him to drive the car and to inspect it. Curtis testified that while the car was being demonstrated that the appellant told him he was a used car dealer from Fargo; that he was in Billings with his brother or brother-in-law looking at some property; that he had a doctor who wanted a good Volkswagen for his son and this one would fit the bill. After some dickering on price they went to the Curtis home to discuss

payment where the appellant produced from a deposit bag of the West Fargo bank a bunch of drafts and he explained to the Curtises how the draft worked as follows:

"* * * And I looked the thing over and I could—as you said earlier, it had typewritten 'West Fargo State Bank' and everything was blank and he filled the rest in. In fact I got my title so we could fill in the motor number and that sort of thing. And he told me that I would keep the draft and the title and I would take the title and the draft to my local banker, who in turn would handle it for me and send it to the bank in West Fargo and they would honor the draft; after they had honored the draft then we would release the title, so the title wouldn't be released, actually until the draft was paid off.

"Q. Mr. Love told you, in fact, that this draft would be honored by the West Fargo State Bank? A. Right. And it's stated right on it if not paid in ten banking days, why he was liable to suit and court costs and what have you."

Mrs. Curtis testified to the events that took place at her home substantially the same as her husband. The appellant denies telling the Curtises that he was a used car dealer from Fargo; that he was in Billings with a relative who was looking for some land or that they would receive payment in three or four days after the draft arrived in Fargo.

The vehicle was turned over to the appellant who had it driven to Pocatello, Idaho, where it was turned over to a daughter. Within a month he sold the car to the Larry Barnes Chevrolet Company of Boise, Idaho, for $300.00 where he gave a Minnesota bill of sale to the dealer.

The draft was taken by the Curtises to their local bank who had it forwarded to the West Fargo. The draft was returned refused by the Fargo Bank for "insufficient funds."

The Vice President of the West Fargo State Bank, a Mr. Roy Johnson, testified at the trial that the appellant had come to the bank on May 23, 1966, six days before appellant gave

Mr. Curtis the draft, and at that time had opened a checking account in the amount of $300.00. Mr. Johnson testified that appellant told him he was a used car dealer; that he would like to open an office in West Fargo; that he came from Upland, Wyoming, and that he gave them different credit references that the bank wrote to and in each instance the reference letters were returned marked "insufficient address" or "unclaimed." Mr. Johnson also testified, over the appellant's objection, that appellant did not have $800.00 in his bank account on the 29th of May, nor did he have that amount on deposit subsequently nor was any request ever made by him to honor the $800.00 draft. Further testimony concerning the checking account was received showing that no deposits other than the $300.00 was ever received from the appellant and that many insufficient checks had been processed on his account after the original deposit.

During the State's case a Mr. L. G. Throop, the Billings banker to whom the Curtises had taken the draft, was called as a witness. Prior to his arrival, and unknown to him, all witnesses had been excluded from the courtroom. Mr. Throop heard some testimony of the prior witness, and at the time he testified the appellant objected to his testimony. The objection was overruled and an exception was taken by the appellant.

On this appeal defendant sets forth as issues:

1. Whether the State proved the necessary elements of the crime of obtaining property by false pretense.

2. Whether it was reversible error to allow a witness to testify when he had been in the courtroom during the trial and the judge had ordered that witnesses be excluded.

3. Whether the court erred by admitting into evidence the state of the defendant's checking account.

4. Whether the court erred in refusing defendant's instructions to the effect that to be guilty of this crime, title as well as possession must be passed to the defendant.

5. Whether there was error in not dismissing the case because the car was owned jointly by seller and his wife and this was not proved at trial as alleged in the information.

The appellant's allegation that the State failed to prove the necessary element of the crime of obtaining property by false pretenses is without merit. Section 94-1805, R.C.M.1947, the statute in question, provides:

"*Obtaining money or property by false pretenses.* Every person who knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property, including evidence of indebtedness, or who causes or procures others to report falsely of his wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets into possession of money or property, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained."

██ ██ Appellant relies upon State v. Bratton, 56 Mont. 563, 186 P. 327, alleging that all four elements of the crime as set forth in that case were not proved here. This court in the Bratton case (supra) said:

"In order to convict of the crime here charged, it is necessary that the prosecution allege and prove: First, the making by the accused to the person injured of one or more representations of past events or existing facts; second, that such injured party believed such representations to be true and, relying thereon, parted with money or property, which was received by the accused; third, that such representations were false; and fourth were made knowingly and designedly, with the intent to defraud such other person." Accepting the Bratton case as authority we will examine the evidence introduced to show that each of the elements of the crime was proven here.

1. While denied by the appellant the testimony of the Curtises set forth numerous statements of past events or

existing facts, as previously set forth in this opinion, and the jury as the finders of fact chose to believe the Curtises' testimony.

2. Concerning the element of reliance by the person injured by the representations made by appellant it is unbelievable that an argument would be made that the Curtises did not rely upon the draft and the representations that it would be honored. Why would they have given up the car to a total stranger if they had not believed his statements?

3. That the representations made by appellant were false was admitted by appellant during the course of his testimony. The use of the draft under the testimony set forth in this case was to the effect that the appellant had money or credit with the drawee, in the amount of its face value, and therefore, was a false representation of the existence of a present fact.

4. Last but not least is the element of the intention of accused to knowingly defraud another person. Here we must concur with the State's contention that appellant's intention to defraud the Curtises is blatantly apparent. The use of the draft without sufficient funds or an arrangement with the bank to honor it; his lack of a business address; the sale of a car worth $800.00 for $300.00; the use of the Minnesota bill of sale for a car with a Montana title all support the jury's findings as to the requisite intent to defraud on the part of appellant.

The next issue set forth concerns the witness who did not hear the court's exclusion order and heard part of a witness's testimony. This issue is without merit for no prejudice was shown. Section 93-1901-2, R.C.M.1947.

Next the appellant alleges that the trial court erred in admitting testimony on the non-sufficiency of appellant's checks and the record of his checking account into the record. We find no merit to this issue. First the appellant failed to object to the introduction of the checking account record, the signature card or the bank statement showing the original

reposit of $300.00, nor was any objection made to the introduction of the first page showing appellant's check transactions. There were 3 pages to the exhibit.

However, considering the appellant's testimony at the trial where great efforts were made to establish himself, in the eyes of the jury, as a financially responsible used car man from Fargo, we cannot agree that the Court abused its discretion in allowing in evidence showing of the appellant's true fiscal situation. Throughout his testimony he told of his good intentions to pay for the car while in truth and fact he had written checks far in excess of his one deposit of $300.00. He testified that he had good credit references yet he produced not one at the trial. He testified that the bank had tried to sell him a lot in West Fargo and this was denied by the banker. Rebuttal evidence offered by the State is admissible if it has a tendency to contradict or disprove evidence of the defense. State v. Cates, 97 Mont. 173, 33 P.2d 578.

Appellant next takes issue with the trial court's refusal of three of appellant's instructions. These prepared instructions 11, 12 and 13 allege that to be convicted of the crime of obtaining property by false pretenses, the appellant must have obtained both title to and possession of the 1961 Volkswagen and that Mr. Curtis must have intended to give him both possession and title at the time the car was surrendered. This theory runs against the statute. Section 94-1805, R.C.M.1947 does not require that title pass, only possession. See 2 Wharton Criminal Law and Procedure, § 601, p. 356, 12th Edition 1957; Nelson v. United States, 97 U.S.App.D.C. 6, 227 F.2d 21, 25, 53 A.L.R.2d 1206, 1210. The Court properly refused the offered instructions.

The last peg on the hall tree of issues raised by the appellant concerns the statement in the information that the car was owned by Alan Curtis. At the trial the appellant brought forth testimony showing that the car was jointly owned by Mr. and Mrs. Curtis and as a result of this testimony

the appellant moved to dismiss "on the failure of proof in that the prosecution had failed to prove that the automobile in question was owned by Alan Curtis, and secondly, the evidence has been introduced that the automobile was owned by someone other than Mr. Alan Curtis, namely, Louise Curtis." The joint ownership as revealed here is not a fatal variance within the doctrine as set forth by this Court in State v. Elmore, 126 Mont. 232, 247 P.2d 488. The Elmore case concerned the proper identification of cattle brands and has no relation to the facts set forth in this case. Here there was no question to whom the Volkswagen belonged before the fradulent taking.

This court will not reverse the decision of a trial court unless prejudice is shown, and there is no showing made here that in the preparation of his defense appellant was in any way prejudiced by the omission of Mrs. Curtis's name as a co-owner.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL, ADAIR and CASTLES, concur.