517 S.E.2d 229

**The STATE, Respondent,**

v.

**Ricky PRINCE, Appellant.**

**No. 2976.**

Court of Appeals of South Carolina.

Heard March 10, 1999.

Decided April 26, 1999.

<hr>

468

Assistant Appellate Defender Aileen P. Clare, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor W. Townes Jones, IV, of Greenwood, for respondent.

HEARN, Judge:

Ricky Prince appeals his convictions for malicious injury to personal property greater than one-thousand dollars and for aggravated stalking. The trial court sentenced Prince to concurrent terms of five years for the malicious injury to personal property and twelve years for aggravated stalking, suspended upon service of eight years with five years probation. In addition, Prince's current probation was revoked, to be served concurrently with this sentence. We affirm.

## FACTS/PROCEDURAL HISTORY

Prince was married to his now ex-wife Tabatha on August 27, 1994. After a brief and stormy marriage, they separated in 1996. Tabatha instituted divorce proceedings, moved into her own apartment, and was granted temporary custody of their son, Matthew. Prince began visiting her apartment, ostensibly to see Matthew, and would show up occasionally without invitation or notice.

The sequence of events leading to the incident for which Prince was convicted took place primarily in the ten days immediately prior to the final divorce hearing on October 21, 1996. During this time, there was a restraining order forbidding Prince from going to Tabatha's apartment. Nevertheless, Prince appeared at Tabatha's apartment twice on October 12, refusing to leave until she threatened to call the police. On October 14, Prince again went to Tabatha's apartment, found her hiding from him at her neighbor Sue's home, and would not leave until Tabatha threatened to call the police. Again on October 16, Prince arrived at Tabatha's apartment uninvited. When Tabatha told him Sue was going to call the police, Prince said, "I'm going to tell you, . . . you ain't going to have nobody. . . . If I can't have you, nobody else will. . . ." Tabatha called the police, and Prince eventually left. Prince telephoned Tabatha later that night, and she refused to speak with him.

On October 18, Tabatha, who had not owned a car since she had been living in her apartment, purchased a car and parked it in her assigned parking spot that night. Prince knew which was her parking spot. The next morning, she discovered her tires were slashed and "Xs" were gouged into every surface on

the body of her car. A neighbor had seen Prince slash the tires around midnight, and another neighbor had observed a car matching the description of Prince's son's car pull out of the apartment parking lot around 3:00 a.m. Later that morning, Due West Police Chief Busbee saw Prince driving his son's car. In addition, Prince was known to carry a pocket-knife, and Tabatha testified she was having no trouble with anyone but Prince at the time of the incident.

On January 10, 1997, Prince was indicted for aggravated stalking and malicious property damage over one-thousand dollars. After a jury trial, Prince was found guilty as charged. At the beginning of the trial, Prince's counsel made a motion to quash the indictment for aggravated stalking, arguing that damage to property is not an act of violence under South Carolina Code section 16–3–1700(C) (Supp.1998) (effective June 12, 1995), sufficient to support a charge of aggravated stalking. The judge denied that motion. At the close of the State's case, Prince moved for a directed verdict, arguing there was insufficient evidence of property damage over one-thousand dollars because the State's only eyewitness merely saw Prince slash the tires, to which the parties stipulated a two-hundred dollar value. Further, Prince renewed his argument that there was no evidence of an act of violence against a person, and that violence against property was insufficient to support the charge of aggravated stalking. These motions were denied. After the jury verdict, Prince moved for a new trial based "on all the prior objections and the fact that the evidence doesn't substantiate the verdict." This motion was also denied.

Prince was sentenced to concurrent terms of twelve and five years respectively, suspended upon service of eight years in prison and five years probation. Further, Prince's current twenty-one months of probation were revoked. This appeal followed.

## ANALYSIS

### I. *Malicious property damage over one-thousand dollars*

Prince argues there was insufficient evidence he was liable for malicious injury to property over one-thousand dollars when the State's eyewitness only saw Prince slash his

ex-wife's tires, valued at two-hundred dollars. We find the trial judge correctly denied Prince's directed verdict motion.

In reviewing a refusal to grant a directed verdict, we must view the evidence in the light most favorable to the State, and must determine whether there is any direct or substantial circumstantial evidence that reasonably tends to prove the defendant's guilt or from which his guilt may be logically deduced. *State v. Prince,* 316 S.C. 57, 64, 447 S.E.2d 177, 181 (1993).

An eyewitness saw Prince slash his ex-wife's tires, and there was substantial circumstantial evidence from which the jury could logically infer that Prince was responsible for all of the damage to the car. Not only was it three days before their final divorce hearing, but Prince had threatened Tabatha two days prior. He knew where she lived and which was her parking space. He had been rebuffed several times that week. Tabatha was not having problems with anyone but Prince during that period. He carried a pocketknife and was seen slashing her tires around midnight. A car belonging to Prince's son, which Prince was observed driving soon after, was seen leaving the apartment parking lot around 3:00 a.m. Taken together, this is sufficient circumstantial evidence of his guilt for all the damage to Tabatha's car, which totaled approximately $1680.

## II. *Aggravated stalking*

Prince argues the trial judge erred in refusing his motion for directed verdict as to the charge of aggravated stalking. Specifically, Prince argues that property damage is not an "act of violence" sufficient to support a conviction for aggravated stalking. Prince urges this court to construe our stalking statutes to require an act of violence causing bodily injury before aggravated stalking can be charged, claiming such a construction accords with the plain meaning of the term.

The State argues that because the statute is silent, the legislature clearly intended an "act of violence" to encompass acts against property as well as acts against persons. We agree.

 Criminal statutes must be strictly construed against the state and in favor of the defendant. *Williams v. State,* 306 S.C. 89, 91, 410 S.E.2d 563, 564 (1991). The elementary and cardinal rule of statutory construction is that the court must ascertain and effectuate the intent of the legislature. *Mid-State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). Therefore, in interpreting a statute, the words must be given their plain and ordinary meaning without resorting to subtle or forced construction that limit or expand the statute's operation. *Rowe v. Hyatt,* 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996). Statutes, as a whole, must receive "practical, reasonable and fair interpretation consonant with the purpose, design and policy of lawmakers." *Whiteside v. Cherokee County Sch. Dist. No. 1,* 311 S.C. 335, 340, 428 S.E.2d 886, 888 (1993).

 Furthermore, the court should not consider the particular clause being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *South Carolina Coastal Council v. South Carolina State Ethics Comm'n,* 306 S.C. 41, 44, 410 S.E.2d 245, 247 (1991). Statutory provisions should be given a reasonable construction consistent with the purpose of the statute. *Jackson v. Charleston County Sch. Dist.,* 316 S.C. 177, 181, 447 S.E.2d 859, 861 (1994). Statutes that are part of the same act must be read together. *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). Statutes must be read as a whole and sections that are part of the same general statutory scheme must be construed together and each given effect, if reasonable. *Higgins v. State,* 307 S.C. 446, 449, 415 S.E.2d 799, 801 (1992).

The issue presented by this case is one of first impression in this state. Our current harassment and stalking statute, which took effect on June 12, 1995, delineates a three-tiered approach to stalking crimes. The first level, harassment, is a misdemeanor, and the statute specifically includes vandalism and property damage as acts sufficient to support a harassment charge. S.C.Code Ann. § 16–3–1700(A)(4) (Supp.1998) (effective June 12, 1995). The second level, stalking, is also a misdemeanor, but the penalties for stalking are greater than those for harassment. *See* S.C.Code Ann. § 16–3–1720 (Supp. 1998) (effective June 12, 1995). A pattern of conduct causing

fear of "damage to the property of the person" is sufficient to support a stalking charge. S.C.Code Ann. § 16–3–1700(B)(6). The third level, aggravated stalking, is a felony and is defined as stalking accompanied or followed by an act of violence. S.C.Code Ann. § 16–3–1700(C). The term "act of violence" is not specifically defined.

Some states that have enacted stalking legislation have clearly limited aggravated stalking to instances involving actual bodily injury. *See, e.g.,* 720 Ill.Comp.Stat. 5/12–7.4 (West 1992 & Supp.1998) ("A person commits aggravated stalking when he or she, in conjunction with committing the offense of stalking, also ... causes bodily harm to the victim ... [or] confines or restrains the victim...."); Vt.Stat.Ann. tit. 13, § 1063(a)(3) (1993) ("A person commits the crime of aggravated stalking if the person intentionally stalks another person" and "has been previously convicted of an offense an element of which involves an act of violence against the same person....")

At least one U.S. jurisdiction specifically mentions and includes property crimes in its aggravated stalking scheme. In the Virgin Islands, a person is guilty of aggravated stalking "who commits the crime of stalking which involves a crime of violence as defined in Title 23, section 451." V.I.Code Ann. tit. 14, § 2072(d) (1994). "Crime of violence" is defined to include the property crimes of arson, robbery, burglary, unlawful entry, and larceny. V.I.Code Ann. tit. 23, § 451(e) (1968 & Supp.1998).

Another state provides two specific definitions of aggravated stalking that go beyond the normal parameters of most such legislation. Nevada may prosecute spouses who are guilty of stalking "while a proceeding for the dissolution of their marriage is pending for which he has actual or legal notice or within six months after entry of the final decree of dissolution," Nev.Rev.Stat. § 200.575(2)(b) (1989 & Supp.1998), and parents who are guilty of stalking "on a person with whom he has a child in common while a proceeding for the custody of that child is pending for which he has actual or legal notice." Nev.Rev.Stat. § 200.575(2)(c) (1989 & Supp.1998). These two explicit definitions of aggravated stalking in "family" cases do not require a threat of death or substantial bodily harm, but

merely a course of conduct causing a reasonable person to feel terrorized or harassed. Nev.Rev.Stat. § 200.575(1) & (6)(a) (1989 & Supp.1998).

The foregoing examples of explicit and clear statutory language are not the norm, however. The majority of stalking and aggravated stalking legislation is framed in vague terms of "conduct causing fear of bodily injury" and "credible threats of bodily injury." These types of schemes arguably leave room for interpretation of whether property damage could suffice. For example, vulgar and threatening language gouged with a knife into a victim's front door is property damage that could very well constitute a course of conduct causing fear of bodily injury. All of these statutes, though, are *completely* silent about property damage.[1]

---

1. *See, e.g.,* Ala.Code § 13A-6-90 & -91 (1992) (A stalker acts with the intent to place the victim "in reasonable fear of death or serious bodily harm," and aggravated stalking is stalking in violation of any court order or injunction.); Fla.Stat. ch. 784.048(3) (1992 & Supp.1998) (a person is guilty of aggravated stalking if he commits the crime of stalking "and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury ..."); Ga.Code Ann. § 16-5-90 & -91 (1993 & Supp.1998) (defining stalking as a "course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety ... and which serves no legitimate purpose," and aggravated stalking as stalking in violation of injunctive relief); Mo.Ann.Stat. § 565.225(3) (West 1993) (a person commits the crime of aggravated stalking who commits the crime of stalking and "makes a credible threat with the intent to place that person in reasonable fear of death or serious physical injury ..."); Mich.Comp. Laws Ann. § 750.411i(2)(c) & (1)(b) (1992 & Supp.1998) (A person is guilty of aggravated stalking if that person engages in stalking and "[t]he course of conduct includes the making of one or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim.... [A credible threat is] a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual."); Nev.Rev.Stat. § 200.575(2)(a) (1989 & Supp.1998) (A person who commits the crime of stalking and who also "threatens the person with the intent to cause him to be placed in reasonable fear of death or substantial bodily harm" is guilty of aggravated stalking.); N.M.Stat.Ann. § 30-3A-3(A) & -3.1(A) (Michie 1997) (Stalking is "knowingly pursuing a pattern of conduct that would cause a reasonable person to feel frightened, intimidated or threatened," and aggravated stalking is stalking in violation of a protective order, with a deadly weapon, or perpetrated on a victim under age

South Carolina's first stalking legislation, adopted in 1992, mirrored the vague language of the majority of such legislation. S.C.Code Ann. § 16-3-1070 (1992) (repealed by Act No. 94, § 2, effective June 12, 1995). It was a wholesale adoption of California's stalking legislation that was criticized as "seriously flawed, in both form and substance." Thomas R. Haggard, *The South Carolina Anti-Stalking Statute: A Study in Bad Drafting*, S.C. Law. 13, 14 (Mar./Apr.1994). One of the main criticisms was that "[t]hreats to destroy property are not covered, which is unfortunate since this is a frequent tactic of stalkers." *Id.* at 15. In 1995, our current anti-stalking legislation completely replaced the first version.

Although "act of violence" is not explicitly defined in South Carolina, our current legislative scheme is not silent about the role that property damage can play in a stalking conviction. In our state, stalking can take different forms: it can be either a pattern of conduct causing fear of damage to one's person, or a pattern of conduct causing fear of damage to one's property. S.C.Code Ann. § 16-3-1700(B)(1) to (6). If simple stalking can consist of *fear* of property damage, it logically follows that aggravated stalking can consist of *actual* property damage.[2] Thus, reading the statutes together, the plain language and its logical interpretation support our holding today that an act of violence for aggravated stalking may include actual property damage.[3]

Moreover, that our legislature specifically chose *not* to define "act of violence" buttresses our conclusion. Had the legislature intended for that term to be defined narrowly, it could easily have inserted limiting language. Instead, there is no limitation on the term. We decline to impliedly limit our

sixteen with the intent to place the victim in apprehension of death or bodily injury.).

2. We do not mean to limit our holding here to cases where the stalking consists of a pattern of conduct causing fear of property damage. Property damage can be an act of violence sufficient for aggravated stalking regardless of the particular stalking behavior.

3. Prince confines his arguments to whether, in general, property damage can support aggravated stalking. He has not argued that the damage to Tabatha's car in this case does not factually rise to the level of an act of violence. Thus, we take no position on the merits of that issue.

statutory scheme to acts of bodily injury when the legislature expressly did not do so.

We also believe the interpretation Prince urges undermines the public policy behind anti-stalking legislation. This state adopted these statutes to protect stalking victims and provide help and intervention *before* a pattern of harassing conduct results in bodily injury or death. To require that one can *only* be guilty of aggravated stalking when there is a bodily injury does not promote the public policy of apprehending stalkers at the earliest possible moment before their acts of stalking escalate to acts of violence against the victim. To so hold would be illogical.

Prince argues that because actual harm to property is encompassed by harassment, the legislature could not have intended that the same conduct also support an aggravated stalking charge. The State, on the other hand, argues that while one isolated incident of property damage could be harassment, if it is accompanied by a pattern of conduct causing fear, it could be sufficient as an aggravating factor to justify a charge of aggravated stalking. We agree with the State.

When a stalking incident involves an act of bodily injury, other crimes may have been committed and other charges could be appropriate, such as assault with intent to kill or assault and battery of a high and aggravated nature. *E.g.*, S.C.Code Ann. § 16-3-651 to -654 (1976 & Supp.1998) (criminal sexual conduct); § 16-3-620 (assault and battery); § 16-25-65 (criminal domestic violence); § 16-3-610 (assault with a concealed weapon). We do not think the legislature meant to provide multiple felony coverage in the case of fear-inducing behavior accompanied by bodily injury, but not in the case of fear-inducing behavior accompanied by property damage. Prince's proposed solution of convicting vandals of the misdemeanor of harassment simply does not serve the same deterrent purpose as a felony conviction for aggravated stalking.

## CONCLUSION

We hold that an "act of violence" sufficient to support a charge of aggravated stalking can be an act of violence against

property. Our statutory stalking scheme specifically references property damage, and the policy of protecting stalking victims before a pattern of conduct escalates to physical injury is best served by this interpretation. Accordingly, Prince's convictions for malicious property damage over one-thousand dollars and for aggravated stalking are

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.