528 S.E.2d 675

**The STATE, Respondent,**

v.

**Martin K. DICKINSON, Appellant.**

No. 3120.

Court of Appeals of South Carolina.

Submitted Jan. 11, 2000.

Decided Feb. 22, 2000.

Rehearing Denied May 6, 2000.

Assistant Appellate Defender Melody J. Brown, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

HEARN, Justice:

Martin K. Dickinson appeals his conviction for obtaining property under false pretenses in violation of S.C.Code Ann. § 16–13–240 (Supp.1999). He contends the trial judge erred in failing to direct a verdict of acquittal as the state failed to produce sufficient evidence that he obtained property from the victim with the intent to cheat or defraud. We disagree and affirm.

## FACTS/PROCEDURAL HISTORY

On January 10, 1998, Dickinson drove a rental car to Ronnie Carter Pontiac (Dealer) in Rock Hill, South Carolina and indicated a desire to purchase a vehicle. After test-driving several vehicles, Dickinson decided on a brand new GMC Sonoma truck. Once Dickinson negotiated a price for the truck, he informed Dealer that he would pay with cash he had due to a family inheritance. He wrote a check to Dealer for $20,044.00. In the purchase process, Dickinson gave a contact address which he said belonged to a condominium he had recently purchased in Lake Club and was currently renovating. Dealer also made a copy of Dickinson's driver's license. The address on the driver's license was later determined to be non-existent. Dickinson then left with the vehicle.

Because January 10 was a Saturday, Dealer could not verify the check until the following Monday. At that time, the bank that the check was drawn upon indicated there were insufficient funds to cover the check. Dealer began to leave voice mail messages for Dickinson. Additionally, Dealer sent a certified letter to the Lake Club address provided by Dickinson. The letter was undeliverable at that address, but was forwarded by the post office to an address in Charlotte, North Carolina. The homeowner's association at Lake Club indicated that Dickinson did not live there, and in fact the address Dickinson gave had been vacant for almost two years. Dickinson responded by fax and actually returned the vehicle ten

days later on January 20, but he then continued faxing Dealer, conveying an intention to pay for the truck with funds from another account. Dickinson never provided those funds.

Officers with the York County Sheriff's Department arrested Dickinson on February 25,1998. At that time, Dickinson admitted that he had never lived at the Lake Club address and that he knew he did not have sufficient funds to cover the check when he wrote it.

At trial, the facts above were all testified to by witnesses for the state. Additionally, two witnesses, record keepers from the two banks at which Dickinson maintained accounts, testified that at no time during the period in question did Dickinson ever have over $994 available on deposit.

At the close of the state's case, Dickinson moved for a directed verdict, which was denied, and the jury returned a guilty verdict. The trial judge sentenced Dickinson to five years imprisonment.

## DISCUSSION

When reviewing the denial of a directed verdict motion in a criminal case, this court must view the evidence in the light most favorable to the state. *State v. Crane*, 296 S.C. 336, 341, 372 S.E.2d 587, 590 (1988). If the state presents any evidence reasonably tending to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced, the case is one the jury must decide. *State v. Burdette*, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999). Thus, as when a trial court decides a directed verdict motion in a criminal case, we are concerned with the existence or non-existence of evidence, not its weight. *See Id.*

The evidence in this case is not at issue. It is uncontroverted that Dickinson wrote a check which he knew could not be honored in order to obtain a new vehicle. He also gave Dealer an address at which he never resided. Additionally, he allowed Dealer to copy his driver's license, which contained a non-existent address. After providing this false information and a worthless check, Dickinson left with a new truck. Several days later, Dealer realized the check could not be cashed and began making attempts to contact Dickinson. It then realized that the contact information it had been provided

was false. About ten days later, Dickinson returned the truck. In the interim, the South Carolina Department of Public Safety issued the title to the truck in Dickinson's name. Also, Dickinson began making assurances that he would make the check good.

The state charged Dickinson with violating S.C.Code Ann. § 16–13–240, which makes it a felony to "by false pretense or representation" obtain "from another person any chattel, money, valuable security, or other property, real or personal, with intent to cheat and defraud a person of that property ... if the value of the property is five thousand dollars or more." S.C.Code Ann. § 16–13–240(1) (Supp.1999). The supreme court has defined this offense as requiring a fraudulent representation of a *past* or *existing* fact by one who knows of its falsity, in order to induce the person to whom it is made to part with something valuable. *See State v. Love,* 275 S.C. 55, 62, 271 S.E.2d 110, 113–14 (1980) (quoting *State v. Haines,* 23 S.C. 170).

Without question, Dickinson's conduct falls within the ambit of the statute at first glance. However, Dickinson argued in his directed verdict motion, and contends on appeal, that he could not be guilty of the offense until the title passed to him. In other words, he has not actually obtained the vehicle merely by taking physical possession. To complete the offense he must actually obtain the title as well. This distinction is of grave importance here, because by the time the title passed Dealer knew the check was worthless and the addresses were false. Furthermore, because Dickinson then began to make representations that he would make the check good, these promises involved future conduct and could not support a conviction for obtaining goods under false pretenses. *See State v. McCutcheon,* 284 S.C. 524, 525, 327 S.E.2d 372 (Ct.App.1985) ("A promise to do something in the future cannot constitute the basis of a prosecution for obtaining goods under false pretenses.").

The argument of course presupposes that passage of title is a required element for completion of the offense. Dickinson cites no case in support of this proposition [1], and our research

---

1. Dickinson cites *State v. Hicks,* 77 S.C. 289, 57 S.E. 842 (1907), for the proposition that, "It is the passing of title that actually confers owner-

reveals no South Carolina cases dealing directly with this issue. Thus, it is a question of first impression in this state.

We are reminded that we must strictly construe criminal statutes against the state and in favor of the defendant. *Williams v. State,* 306 S.C. 89, 91, 410 S.E.2d 563, 564 (1991); *State v. Prince,* 335 S.C. 466, 472, 517 S.E.2d 229, 232 (Ct.App.1999). However, the cardinal rule of statutory construction is that the court must ascertain and effectuate the intent of the legislature, and in interpreting a statute, the court must give the words their plain and ordinary meaning without resorting to a tortured construction which limits or expands the statute's operation. *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996); *Rowe v. Hyatt,* 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996). Moreover, we should give statutory provisions a reasonable construction consistent with the purpose of the statute. *Jackson v. Charleston County Sch. Dist.,* 316 S.C. 177, 181, 447 S.E.2d 859, 861 (1994).

The statute in question makes no mention of title or passage of title. It simply criminalizes "obtaining" the property in question in a fraudulent manner. Black's Law Dictionary defines "obtain" as follows: "To get hold of by effort; to get possession of; to procure; to acquire, in any way." Black's Law Dictionary 1078 (6th ed.1990). We find this to be the plain and ordinary meaning of the word. Furthermore, we find actual, physical possession satisfies this definition.

The statute makes it a crime to obtain "*any* chattel, money, valuable security, or other property, real or personal." In other words it protects all species of property, without regard to any special status, such as a titling requirement. The statute does not elevate automobiles to any special protection because of the title laws. Conversely, neither does the statute give any less protection to automobiles, which Dickinson's

---

ship and completes the taking under a non-trespassory transaction." Our careful reading of *Hicks* reveals no suggestion of this proposition. Furthermore, South Carolina treats title not as absolute, but only prima facie evidence of ownership, which can be rebutted. *See State Auto Ins. Co. v. Stuart,* 287 S.C. 235, 238, 337 S.E.2d 698, 700 (Ct.App.1985).

argument has the practical effect of doing. The focus of the statute is on the method of misappropriation and the property involved, not the form that possession ultimately takes. Moreover, to focus on the passage of title would be irrelevant when any title actually obtained would be void or voidable once the fraud was discovered. This would render crimes involving titled property, such as automobiles and real property, unpunishable under this statute, as good title would never pass to a defendant who obtained it by fraud. As the legislature expressly included real property in the ambit of the statute's protection, Dickinson's argument cannot prevail.

Additionally, Dealer, in reliance upon the false representations of Dickinson, intended to transfer title to him contemporaneously. However, through the fortuities of time, i.e., banking hours and paperwork delays in the issuance of title, Dealer discovered the insufficiency of funds and falsity of the representations before the title was actually issued. We will not allow Dickinson to take advantage of sheer chance by reading an additional element into a criminal statute. "In a criminal prosecution it must appear not only that the defendant has violated the letter of the law but the spirit thereof." *State v. DeAngelis*, 257 S.C. 44, 52, 183 S.E.2d 906, 910 (1971) (Bussey, J., dissenting). Dickinson has clearly violated both in the instant case. We will not read into the statute a special requirement based on the type of property involved, where the legislature has indicated an intention to protect all classes of property equally.

We find further support for our interpretation in decisions of other jurisdictions whose statutes and case law are silent on the subject of passage of title. In *State v. Love*, 151 Mont. 190, 440 P.2d 275 (1968), the Supreme Court of Montana refused to require that both title and possession pass in upholding a conviction for obtaining property by false pretenses, where the applicable statute did not require that title pass. *Love*, 440 P.2d at 279. In a case closer to home, the North Carolina Court of Appeals held in *State v. Kelly*, 75 N.C.App. 461, 331 S.E.2d 227 (1985), that neither their statutory nor case law prescribed or implied passage of title as a necessary element of the offense of obtaining property by

false pretenses. *Kelly*, 331 S.E.2d at 230. We also find persuasive the fact that neither our legislature nor prior case law has required passage of title for a conviction under § 16–13–240.[2]

Because the state's evidence showed that Dickinson violated the statute's express terms by making false representations as to his address and uttering a check which he had grossly insufficient funds to cover, thereby gaining actual possession of a new truck from Dealer, the trial judge properly submitted the case to the jury. *See State v. Hicks*, 77 S.C. 289, 57 S.E. 842 (1907) (If false pretenses are shown in trial for obtaining property under false pretenses, intention is a question of fact to be submitted to the jury.).

**AFFIRMED.**

HOWELL, C.J., and CURETON, J., concur.

---

**2.** We recognize that some jurisdictions require passage of *both* title and possession before a conviction for obtaining property under false pretenses. However, we note that these jurisdictions rely on common law distinctions between trespassory and non-trespassory offenses preserved in their current codes, as well as prior precedents within their own court systems. *See generally, State v. Sabins*, 256 Iowa 295, 127 N.W.2d 107, 108–09 (1964) (preserving common law distinction requiring passage of title for conviction of false pretenses). We are not bound by such constraints, as our courts have not yet addressed the issue, and our statutes make no mention of this common law distinction. We also note that other jurisdictions do not focus on whether title actually passed, but rather focus on whether the victim intended to pass title. *See generally, People v. Malach*, 202 Mich.App. 266, 507 N.W.2d 834, 837 (1993) (distinction between larceny and false pretenses depends entirely upon the intent of the victim: if owner of goods intends to keep title but part with possession, the crime is larceny; if owner intends to part with both title and possession, the crime is false pretenses); *Jones v. State*, 56 Ala.App. 444, 322 So.2d 735, 737–38 (1975) (focusing on intent of victim in defining crime as larceny or false pretenses). Although our statute does not require this focus any more than it requires title to actually pass, focusing on the intent of the victim certainly accords with the result we reach by our interpretation.