# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHRISTOPHER ALLAN OROS,

      Defendant-Appellant.

FOR PUBLICATION
June 8, 2017
9:25 a.m.

No. 329046
Kalamazoo Circuit Court
LC No. 2014-001711-FC

Before: STEPHENS, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals from his jury convictions of first-degree premeditated murder, MCL 750.316(1)(a); first-degree felony murder, MCL 750.316(1)(b); first-degree arson, MCL 750.72; second-degree home invasion, MCL 750.110a(3); and escape while awaiting trial, MCL 750.197(2). He asserts that there was insufficient evidence to support the conviction of premeditated murder and felony murder and that those convictions should be reduced to second degree murder. He also seeks reversal on grounds of evidentiary and procedural error as well as a resentencing.

For the reasons set forth in this opinion, we reduce defendant's conviction of first degree premeditated murder to second-degree murder and remand for sentencing for that offense. We also vacate his conviction of felony murder and remand for a new trial on that charge. We reject his other claims of error and do not address the sentencing issue as it is moot.

## I. FACTS

On November 22, 2014, emergency personnel responded to a fire at the apartment complex of the victim, Marie McMillan, in Kalamazoo, Michigan. The responders extinguished the fire and discovered the victim's body on a bed in her bedroom. Testimony from first responders showed that someone had piled items over her body and set it on fire. An autopsy determined that the victim had died before the fire was set as a result of multiple stab wounds.

Police officers learned that a man had been knocking on the doors of the apartments of the victim's neighbors throughout the day of the fire and using a fake story to solicit money. He would tell the residents that his girlfriend had left with his car, debit card, and cell phone. He would then ask to use the person's phone, and, if allowed to do so, he would make a call to a

-1-

number where no one was available to answer it. After the "unsuccessful" call, he would directly or indirectly solicit money from the resident.

Officers determined that the number this man would call from the residents' phones was associated with defendant. They also learned that a call had been made to that number from the victim's phone. The officers tracked defendant down at his apartment in Battle Creek, Michigan, which he shared with his girlfriend, Robin Wiley.[1] When officers arrived, defendant unsuccessfully attempted to flee. After the arrest, defendant was interrogated.[2] During the interrogation, defendant admitted that he had gotten the victim to let him into her apartment and used her phone. He claimed that she then attacked him without provocation by hitting him on the head with a coffee mug and sat on top of him with a "huge knife in her hand." He said that he and the victim struggled for control of the knife, and, when he gained control of the knife, he began stabbing the victim first in the stomach and then, after getting on the victim's back, in the neck and other parts of her body. There were 29 stab wounds in all.

Defendant was charged with both first degree premeditated murder and first-degree felony murder. At trial, defendant argued that he was not guilty of murder because he killed the victim in self-defense. In the alternative, he argued that there were mitigating circumstances that reduced his culpability for her death. The jury rejected his defense and found him guilty as described.

## II. SUFFICIENCY OF THE EVIDENCE OF FIRST-DEGREE PREMEDITATED MURDER

Defendant first challenges the sufficiency of the evidence for his first-degree premeditated murder conviction.[3] "The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 515-516, citing *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979) cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 239 (1980). "The fact that some evidence is introduced does not necessarily mean that the evidence is sufficient to raise a jury issue." *Hampton*, 407 Mich at

---

[1] Wiley testified against defendant at trial. She stated that she had pleaded to being an accessory after the fact to a felony for her role in helping defendant return to the victim's apartment and dispose of evidence.

[2] Defendant did not testify at trial, but his statements were recounted in testimony from the interrogating police officer.

[3] This Court reviews a challenge to the sufficiency of the evidence by reviewing "the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

368. "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000). Defendant does not argue that there was insufficient evidence from which a reasonable jury could have found that he killed McMillan and did so with malice and so he concedes that there was sufficient evidence to support a verdict of second-degree murder. *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (stating that the elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse). Instead, he argues that the prosecution failed to present any evidence from which the jury could reasonably find that he deliberated or premeditated thereby elevating the crime to first degree murder.

First degree murder is a statutory offense. Therefore, we must "interpret the statute by examining its plain language and by employing *applicable* rules of statutory construction." *People v Anstey*, 476 Mich 436, 445 n 7; 719 NW2d 579 (2006) (emphasis in original). The Legislature defined first-degree murder as, in relevant part, "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, *and* premeditated killing," (emphasis added) or as murder "committed in the perpetration of, or attempt to perpetrate" certain enumerated offenses. MCL 750.316(1). Significantly, the Legislature used the conjunctive word "and" in the phrase "other willful, deliberate and premeditated killing." We must, therefore, presume that the Legislature intended different meaning for the words, and there must be evidence of all three to sustain a conviction on this basis. See *Liberty Hill Housing Corp v Livonia*, 480 Mich 44, 57; 746 NW2d 282 (2008) (stating that when the conjunctive is used the Legislature presumes different meanings) and *People v Gardner*, 402 Mich 460, 473-474; 265 NW2d 1 (1978) (stating that because the "assault with intent to rob unarmed statute is conjunctive; there must be an assault with force and violence").

To "premeditate" means "to think beforehand." *People v Morrin*, 31 Mich App 301, 329 187 NW2d 434 (1971). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "premeditate" as "to think about and revolve in the mind beforehand." *Black's Law Dictionary* (10th ed) defines "premeditation" as "[c]onscious consideration and planning that precedes an act (such as committing a crime); the pondering of an action before carrying it out."[4] Premeditation can be proved through circumstantial evidence, however, inferences may "not be arrived at by mere speculation." *People v O'Brien*, 89 Mich App 704, 710; 282 NW2d 190 (1979). The prosecution may establish premeditation and deliberation through (1) evidence of

---

[4] This definition is consistent with the examples provided in the statute. Both poisoning and lying in wait involve conscious planning for an action to be taken later. Where a statute contains general terms that follow immediately after specific terms, the general words are presumed to be of the same kind, class, character or nature as those specifically enumerated." *People v Jacques*, 456 Mich 352, 355; 572 NW2d 195 (1998) (describing and applying the canon of ejusdem generis in statutory construction). This is particularly so where, as in this statute, the general words are preceded by the word "other." *Id*. at 361 (Taylor, J., dissenting). See also Scalia & Garner, Thompson/West, *Reading Law: The Interpretation of Legal Texts*, regarding *ejusdem generis*, pp 199-213.

the parties' prior relationship, (2) the defendant's actions before the killing, (3) the circumstances surrounding the killing itself, and (4) the defendant's conduct after the killing. *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992).

As to the first factor, no evidence was presented that defendant and the victim had a prior relationship. Nor was there any evidence that defendant had previously threatened the victim or that she ever expressed fear of defendant. Thus, consideration of the parties' prior relationship yields no evidence to support a finding of premeditation.

The second factor, i.e. defendant's actions before the murder, similarly yields no support for a finding of premeditation. Defendant had a well-evidenced pattern of trying to trick people into giving him money by using a false story of being locked out of his apartment and needing to get to his place of work. Residents of four other apartments in the same complex that the victim lived in testified that defendant attempted the same scam with them that afternoon, and, though some described him as intimidating, none testified that he acted violently. There was no evidence to suggest that defendant acted with a different plan when he knocked on the victim's door.

The fourth factor concerns the defendant's actions after the murder. In this case, defendant did attempt to cover up the murder, but his actions do not suggest that these attempts were part of a pre-offense plan. He washed the knife, which was an ordinary steak knife, in the victim's kitchen sink and left it there. Nearly two hours later,[5] ample time after the crime to think about the extensive evidence at the victim's apartment, he returned to the apartment, removed bloodied items and set the fire. While evidence an assailant attempted to cover up a murder in its immediate aftermath can support a reasonable inference that the series of events was part of a preconceived plan, see *People v Gonzalez*, 468 Mich 636, 638-639, 642; 664 NW2d 159 (2003), the evidence of defendant's actions after the murder in this case do not evidence a preconceived plan. To the contrary, the fact that defendant initially left the victim's apartment after doing very little, if any, clean up suggests that even after the murder defendant's thought process was still unsettled and that he had not preplanned any means of covering up his crime. The prosecution has not suggested any premeditated plan that would involve leaving the scene of the crime and returning two hours later to attempt to cover it up. Therefore, the evidence of defendant's actions after the murder cannot be used to support a finding of premeditation.

The most significant factor then was the third one, i.e., the circumstances surrounding the killing. The prosecution argues that given the number of stab wounds defendant had adequate time to consciously reconsider his actions in a "second look" and decide whether to continue, i.e. to have premeditated some of the later blows. However, the prosecution's argument that premeditative intent can be formed between successive stab blows has already been rejected by

---

[5] Testimony of defendant's cell phone records established that the murder took place between 4:30 p.m. and 4:38 p.m. Wiley testified that defendant had returned home by "6:15ish" and that, after he changed his clothes, the two of them went back to the victim's apartment. The fire at the apartment complex was first reported at 8:27 p.m.

our Supreme Court. In *People v Hoffmeister*, 394 Mich 155, 157-158; 229 NW2d 305 (1975), the victim and the defendant were seen by witnesses driving into a parking area shortly before the victim drove to a friend's house with "multiple lacerations and stab wounds," where she ultimately died. (Quotations omitted). The prosecutor in that case argued, as the prosecution in this case does, that the number of stab wounds and the brief moments that the victim and defendant were together before the killing were sufficient for a jury to infer premeditation and deliberation. *Id.* at 159. The Supreme Court found that "[t]here is no basis on this record for an inference that between the successive, potentially lethal blows the killer calmly, in a cool state of mind . . . subjected the nature of his response to a second look." *Id.* The Court explicitly stated that "[t]he brutality of a killing does not itself justify an inference of premeditation" because " '[m]any murders most brutish and bestial are committed in a consuming frenzy or heat of passion, and that these are in law only murder in the second degree.' " *Id.* at 159-160 quoting *Austin v United States*, 127 US App DC 180, 190; 382, F2d 129, 139 (1967).

The prosecution refers us to two more recent Supreme Court cases though it does not suggest that they have overruled *Hoffmeister*, and we conclude they can be harmonized with that case.[6] *People v Johnson*, 460 Mich 720, 721-722; 597 NW2d 73 (1999) involved the murder of a social worker at a juvenile detention center by one of the detainees. In that case, which involved manual strangulation, the Court stated that "evidence of manual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.' " *Id.* at 733. However, the Court was careful to note that "neither the brutal nature of a killing nor manual strangulation *alone* is sufficient to show premeditation." *Id.* (emphasis added). Other evidence of premeditation cited by the Court included: that the defendant moved the victim to a more secluded place before committing the murder, that about an hour before the murder he asked another detainee if he'd seen the victim, that he'd asked the victim when she was leaving for the day, and that he directed another detainee away from the area where the murder occurred shortly thereafter. *Id.* In *People v Gonzalez*, 468 Mich 636, 638-639; 664 NW2d 159 (2003), the defendant raped the victim, battered her to death, strangled her, and then set her corpse on fire before leaving the premises. The *Gonzalez* opinion cited *Johnson* for the principal that "[m]annual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look,' " 468 Mich at 641, but it did not conclude that such evidence was sufficient on its own.

That this murder was particularly savage and senseless may be considered by the trial court when imposing sentence for second-degree murder, but it does not provide sufficient evidence to prove premeditated first-degree murder.[7]

---

[6] We recognize that this issue is challenging and bench and bar may benefit from additional clarification from the Supreme Court. See *People v Martin*, 472 Mich 930; 697 NW2d 520 (2005) (Markman, J. dissenting).

[7] Defendant's culpability does not turn on "[t]he apparent savagery of the attack or any number of other factors [that] may appear to some persons to evince the highest degree of moral culpability." *People v Gill*, 43 Mich App 598, 604; 204 NW2d 699 (1972).

### III.     THE FELONY-MURDER INSTRUCTION

Defendant was convicted of a second count of first degree murder on a felony-murder theory.  The prosecution presented evidence that the murder occurred during either of two crimes: larceny from a person, MCL 750.357 or use of false pretenses to defraud MCL 750.218.  On the prosecution's request, and with acquiescence of defense counsel, the trial court instructed the jury that it could convict defendant of first-degree felony murder if it found that he caused the victim's death, did so intentionally, and did so while "committing or attempting to commit the crime of attempted false pretenses under 200 dollars and/or larceny under 200 dollars."  Consistent with this instruction, the jury verdict form did not require the jury to specify which of the two underlying crimes was the basis for its conviction; the form simply required the jury to indicate whether or not it found defendant guilty of felony murder.

On appeal, defendant correctly points out that using false pretenses cannot serve as the basis for a felony murder conviction.  The prosecution does not disagree.  It appears from the record that the prosecutor, defense counsel, and the trial court were all under the mistaken belief that using false pretenses was a larceny for purposes of felony murder.  However, it is long-settled that the crime of using false pretenses does not constitute a larceny because the victim intends to part with title and possession of the property rather than merely possession.  *Peoplv v Malach*, 202 Mich App 266, 271; 507 NW2d 834 (1993).

On appeal, the prosecution does not argue that defendant could have properly been convicted of felony murder based on using false pretenses as the predicate offense.  Nor does it argue that the conviction should stand because the jury might have concluded that defendant had committed larceny from a person rather than using false pretenses.  It is clear that "[w]here one of two alternative theories of guilt is legally insufficient to support a conviction, and where it is impossible to tell upon which theory the jury relied, the defendant is entitled to a reversal of the conviction and a new trial." *People v Grainger*, 117 Mich App 740, 755; 324 NW2d 762 (1982).

The prosecution does, however, maintain that defendant waived his right to raise this error on appeal.  The record does show that both in pre-trial proceedings and at trial, defendant's trial counsel expressed his belief that false pretenses could serve as an underlying felony to support a first-degree felony murder conviction, and he affirmatively stated that he had no issue with the jury being instructed as the prosecution requested.  Typically, where defense counsel affirmatively agrees to an erroneous instruction the error is deemed waived. *People v Carter*, 462 Mich 206, 213-214; 612 NW2d 144 (2000).  However, we decline to do so in this case.

The nature of the instructional error in this case rises to the level of a due process violation, and we conclude that allowing it to stand would undermine the authority of the judiciary.  The error was not merely one in which the jury received an imprecise definition or in which the trial court omitted an element of the offense, where the evidence as to the omitted element was overwhelming.  Here, the instruction directed the jury to convict defendant on the basis of affirmative findings that, by statute, are not grounds to convict.  We, therefore, conclude that defendant's trial counsel could not unilaterally waive this issue without defendant's full knowledge and understanding about exactly what he was waiving.  It is well recognized that "there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client." *Taylor v Illinois*, 484 US 400, 417-418; 108 S Ct 646; 98

L Ed 798 (1988). Among the basic constitutional rights that cannot be waived absent such express consent by the defendant himself is the right to plead not guilty, have a jury trial, and be present at that trial. *Id.* at 418 n 24, and *People v Montgomery*, 64 Mich App 101, 103; 235 NW2d 75 (1975).

If defendant's trial counsel cannot waive a defendant's right to plead guilty and demand a trial on all the elements of the charged offense without the fully informed and express consent of his or her client, we see no reason why counsel should be able to agree that defendant may be found guilty because the jury finds he committed acts that are not grounds to convict. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938). Courts should "indulge every reasonable presumption against waiver," *Aetna Ins Co v Kennedy*, 301 US 389, 393; 57 S Ct 809; 81 L Ed 1177 (1937), and they should "not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel Co v Pub Utilities Comm*, 301 US 292, 307; 57 S Ct 724; 81 L Ed 1093 (1937).

Additionally, in this case, the only reason defense counsel agreed to submission of the felony murder charge was his mistaken view of the law that false pretenses could serve as an underlying felony to a felony murder conviction. Our Supreme Court has previously held that a defendant could not consciously waive a right simply because of his attorney's mistaken view of the law. *People v Grimmett*, 388 Mich 590, 601; 202 NW2d 278 (1972) overruled on other grounds by *People v White*, 390 Mich 245, 257-258; 212 NW2d 222 (1973).

The prosecution refers us to *People v Kowalski*, 489 Mich 488, 502-504; 803 NW2d 200 (2011), and asserts that in that case, the Supreme Court held that waiver can occur even where it involves a constitutional error in instructions.[8] The instructional error in *Kowalski* occurred when the trial court omitted an element of the charged offense. *Id.* at 503. The *Kowalski* Court determined that defense counsel's "explicit[] and repeated[]" approval of the instruction operated as a waiver. *Id.* Despite that determination, however, the Court continued for several pages thereafter to address the substance of the claimed error and ultimately declined to reverse because it concluded that "even if the trial court had properly instructed [the jury] . . . the jury

---

[8] The prosecution has not referred us to any other cases in support of its argument that we should dispose of this case on the basis of waiver. It cites to *People v Carter*, 462 Mich 206; 612 NW2d 144 (2000) and *People v Unger*, 278 Mich App 210; 749 NW2d 272 (2008), but neither involved an instructional error of a constitutional magnitude; rather, the claimed errors were very minor. *Carter* concerned the jury's request for the transcripts of testimony of certain witnesses; in fact no such transcripts yet existed, but defendant argued that the court's instruction that the transcripts were not available was error. *Carter*, 462 Mich at 210, 213-215. In *Unger*, defendant challenged the trial court's decision to give a single limiting instruction which it told the jury applied to the testimony of certain enumerated witnesses. *Unger*, 278 Mich App at 233. Defendant claimed on appeal that the court should have repeated the instructions for each witness separately. *Id.*

would still have convicted defendant" due to the nature of the evidence.[9]  It went on to state that "defendant cannot establish that the trial court's charge to the jury affected the outcome of the lower court proceedings."  *Id*. at 509-510.

> [J]ury instructions that [are] somewhat deficient may nonetheless, when viewed as a whole, have sufficed to protect a defendant's rights when the jury would have convicted the defendant on the basis of the evidence regardless of the instructional error.  If the evidence related to the missing element was overwhelming and uncontested, it cannot be said that the error affect the defendant's substantial rights or otherwise undermined the outcome of the proceedings.  [*Id.* at 506 (footnotes omitted).]

Given this standard, we have reviewed the record to determine whether the evidence as to larceny from a person was "overwhelming and uncontested," so as to determine whether or not in this case the erroneous instruction adequately served to protect defendant's rights and have concluded that it falls well short of that demanding standard.  The evidence to support the charge of larceny from a person was far weaker than the evidence that supported the false pretenses charge, which was overwhelming.  There was no direct or forensic evidence of a larceny, and the only evidence to support it was indirect and inferential.  The prosecution suggests that the fact that when defendant returned to the crime scene to set the fire he took the victim's purse supports an inference that defendant handled the purse during the crime.  It also points out that following the crime, defendant sent a text to an associate that can be read as indicating he had obtained enough money to buy drugs.  Evidence was also offered of a prior incident where defendant had taken valuables from the apartment when its resident refused to give him money.  While such evidence allows for reasonable inferences consistent with guilt, these inferences were vigorously contested[10] and far from overwhelming.

In a related issue, defendant argues not only that the instruction was infirm, but that there was insufficient evidence to convict of larceny from a person.  As just reviewed, the record evidence of larceny from a person was limited, but we conclude, taking the evidence in the most favorable light to the prosecution, that it is sufficient to present to a jury for decision.  Accordingly, we reject defendant's argument that no retrial would be proper.

## IV.    EVIDENCE OF THE VICTIM'S MENTAL HEALTH

Defendant next argues that the trial court abused its discretion when it precluded him from introducing evidence that the victim had a history of mental illness and was paranoid about

---

[9] For the same reason, the Court rejected defendant's claim of ineffective assistance of counsel because, given the evidence, defendant could not demonstrate that in its absence, the result of the proceeding would have been different.  *Id.* at 510 n 38.

[10] Defendant rebuts these inferences by pointing out that he had been given $30 by other apartment building residents and that on the day in question he did not take any property from those residents who refused to give him money in response to his requests.

people trying to kill her.[11] The trial court precluded defendant from introducing such evidence absent a "nexus between the mental illness . . . and violence."

Based on the facts of this case, we do not find the trial court's ruling to be outside the range of reasonable and principled rulings. The evidence of the victim's mental health that the defendant pointed to all came from statements from her family members in police reports. Defendant failed to proffer any proof of prior aggressive behavior linked to the victim's mental illness. Furthermore, statements of the victim's family members would have been lay opinion testimony and could not establish a medical diagnosis. Had defendant been able to establish a link between a mental illness and aggressive behavior showing that the existence of such an illness caused irrational aggression, then such evidence would have been relevant to the jury's determination of whether the victim did act aggressively. However, that is not the case here.

## V.      MOTION TO SEVER

While in jail awaiting trial, defendant attempted to escape from jail by pushing an officer escorting him to a different part of the jail and grabbing the officer's key fob. Defendant's attempt failed when the key fob did not operate the door he attempted to open with it. Defendant was charged with escape while awaiting trial, MCL 750.197(2). Defendant moved to sever this count, but the trial court denied the motion, which defendant argues was erroneous.[12] MCR 6.120(C) provides that the trial court "must sever for separate trials that are not related as defined in subrule (B)(1)." Subrule (B)(1) states that charges are related if they are based on "(a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1). The prosecution argued that this offense was connected to the other offenses. Each of defendant's acts—the cover up, the evasion of arrest, and the escape—were, in the prosecutor's view, related by motive and connected as a series of events taken to avoid incarceration for the offenses he committed on the day at issue. The trial court found that there was a sufficient connection between the acts to warrant joinder and denied defendant's motion on that basis.

Given that the attempted escape from jail happened 12 days after the murder, and appeared to be a crime of opportunity rather than as part of a previous scheme or plan connected with the other crimes, there is some merit to defendant's argument that this event was not related to the murder, arson, and home invasion. However, because defendant's actions in covering up the murder, attempting to evade arrest, and attempting to escape from jail can be seen as a series

---

[11] We review a trial court's decision whether to permit the admission of evidence for an abuse of discretion. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

[12] We review a trial court's decision on a motion to join or sever charges for an abuse of discretion. *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

of connected acts, we do not find that the trial court's decision was outside the range of reasonable and principled outcomes. Additionally, defendant cannot show that if it was erroneous for the trial court to deny his motion that this decision prejudiced him. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Defendant's self-defense claim was extremely weak, and, while the evidence was insufficient to support a conviction of first-degree premeditated murder, the evidence supporting a second-degree murder conviction, as well as a conviction on first-degree arson, second-degree home invasion, and escape while awaiting trial, was overwhelming. Defendant was not prejudiced by the denial of his motion to sever his attempted escape offense from the other charges, and he is not entitled to any relief on this basis.

## VI. SENTENCING ERROR

Defendant's final claim of error is that the trial court erred when it assessed points under the offense variables for his sentencing offense, arson, on the basis of facts involving the murder. See *People v McGraw*, 484 Mich 120, 129; 771 NW2d 655 (2009) (stating that "offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise"). Because the sentencing guidelines do not apply to offenses with a mandatory penalty of life imprisonment, the trial court did not score the guidelines for defendant's first-degree murder convictions. See MCL 769.34(5). Instead, it had to score the variables for the offense of the remaining offenses with the highest crime class. MCL 771.14(2)(e); see also *People v Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014). Following his jury trial, arson was the offense with the highest crime class. See MCL 777.16c and MCL 777.16f.

However, in light of our decision to reduce defendant's first-degree premediated murder conviction to second-degree murder, that conviction becomes the offense with the highest crime class. See MCL 777.16p and MCL 777.16c. Therefore, defendant's claim of error is moot. See *Swinehart v Secretary of State*, 27 Mich App 318, 320; 183 NW2d 397 (1970) (explaining that the Court does not consider moot questions). Defendant is to be resentenced on the basis of a second-degree murder conviction.

## VII. CONCLUSION

We reduce defendant's first-degree premeditated murder conviction to second-degree murder. Defendant is to be resentenced on this basis. We vacate defendant's conviction of first-degree felony murder and remand to allow for retrial on that charge. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

-10-